## Slaven, et al v. Dority.

(Decided March 3, 1911.)

### Appeal from Whitley Circuit Court.

1. Ejectment—Possession Under Color of Title—Boundary.—Where one is in actual possession, under color of title, of a part of the land within his boundary, the law by construction carries his possession to the full extent of his boundary.

2. Same—Title by Adverse Possession.—Where one claims title by adverse possession only, he acquires no title to any land except that which is in his actual possession.

3. Same—Construcive Possession—Squatter's Title.—There can be no constructive possession without color of title. The squatter's sovereignty is confined to his dominion.

E. L. STEPHENS, WILLIAM LOW, GEO. P. JOHNSON and I. N. STEELY for appellants.

H. H. TYE and R. L. POPE for appellee.

OPINION OF THE COURT BY JUDGE MILLER—Reversing.

This is a suit in ejectment brought by E. K. Dority against his father, H. C. Dority, and the other children of H. C. Dority, to recover a small tract of land on Laurel Branch and the waters of Bear Creek in Whitley County. The jury found for the plaintiff, and the defendants have appealed.

H. C. Dority, the father, owned and lived upon what is known as the "Abbott Survey" or patent of 250 acres. In 1854 Wait and Hudson patented 9,600 acres of land, which included the Abbott survey within its boundary, but expressly excepted it as being a senior patent. All the land west of the Abbott survey, including the land in controversy, was embraced within the Wait and Hudson patent of 1854. In 1882 H. C. Dority and his two sons, the appellee E. K. Dority and Emanuel Dority, surveyed as vacant land 200 acres on the west side of, and adjoining, the Abbott survey, upon which H. C. Dority then lived. This survey was made upon the idea that the 200 acres of vacant land was not embraced within the Wait and Hudson patent, or within any patent. In 1884 the appellee E. K. Dority settled upon the northern end of this 200-acre tract, built a house thereon, and cleared and cultivated some ten acres of the land. In 1891, the Wait and Hudson 9,600-acre tract having come into the possession of Van Winkle and Chamberlain, and it being apparent that the title of the Doritys to the 200 acres they had surveyed in 1882 was inferior to the Wait and Hudson patent of 1854, E. K. Dority and Van Winkle made the following agreement:

"July 29, 1891.

"In 1882 together with my father, H. C. Dority and my brother Manuel Dority we laid an entry on 200 acres of land on waters of Bear Creek, Whitley Co., Ky. and for said entry a Kentucky Patent was issued in our names. It now appears to me that said patent is located within and is inferior in law and age to the Wait and Hudson 9,600-acre patent, owned by Chamberlain and VanWinkle, and whereas I have probably built my barn within this 200 acre patent and desire to improve some

land to farm on which is within said 200 acres, I agree to pay Thirty Dollars for 100 acres $30.00 for the farm (surface right) whenever a deed for said 100 acres is offered by them to me. My intention is not to act against said VanWinkle & Chamberlain.' In case I have not all the money at the time the deed is offered it is understood that I am to pay part down, the balance in stated sums at stated times.

"ELISHA DORITY,
"JOHN S. VANWINKLE."

The Chamberlain interest in the Wait and Hudson patent was subsequently acquired by Roberta S. Bryant, of Danville, Ky., and on December 11th, 1900, she agreed with E. K. Dority to carry out the contract of July 29th, 1891; whereupon E. K. Dority executed and delivered to her his note, which reads as follows:

"$30.00                    Pine Knot, Ky., Dec. 11, 1900.
"One day after date I promise to pay to the order of Roberta S. Bryant of Danville, Ky., Thirty Dollars and no 100 Dollars at Bryant Bros. office, Pine Knot, Ky., being first payment on land this day deeded said Dority by said Bryant, and for the payment of which a lien is retained in said deed. Value received with interest at 6 per cent per annum.
"No.—— Due——                    E. K. DORITY."

A deed was made by Mrs. Bryant to E. K. Dority in compliance with the contract of July 29th, 1891, but it was never put to record and has not been introduced in this case. The appellants repeatedly called upon E. K. Dority to file said deed for the purpose of showing its terms and as possibly shedding some light upon his title, but appellee has not filed it.

In 1899 Mrs. Bryant sold to H. C. Dority, the father, 145 acres which embraces a part of the land in question in this suit. This 145-acre tract and the adjoining 36 1-2 acres constitute the southern portion of the tract claimed by appellee. H. C. Dority subsequently gave a part of the 145 acre-tract to his daughter, Mrs. Slaven, and put her in possession thereof. Mrs. Bryant also sold the 36 1-2 acres to Emanuel Dority. H. C. Dority assisted his daughter, Mrs. Slaven, in building a house upon the part he had given her, and she and her husband had been living upon it about ten years when this suit was brought in October, 1906. It appears, there-

fore, that the entire 200 acres was subsequently con-
veyed by Mrs. Bryant to the Doritys, but that E. K.
Dority has never recorded the deed for his portion of
the tract. The 145 acres conveyed by Mrs. Bryant to H.
C. Dority, and the 36 1-2 acres immediately south of it
conveyed by Mrs. Bryant to Emanuel Dority, embrace
the land in controversy in this action.

The appellee rests his title solely upon an alleged
adverse possession of the land for more than fifteen
years before the action was brought. He did not show
any record title to any portion of this land. There was,
however, some parol testimony tending to show that he
was claiming under what is known as the Beatty and
Ingram survey or patent. There is no record evidence,
however, that there was ever such a survey made or
patent granted. In 1881 the sheriff sold 100 acres, called
the Beatty and Ingram tract, to Douglas for $3.61, the
delinquent State tax for 1879; and,, in 1892 the sheriff of
the county made a deed for the land to "the heirs" of
Douglas, the purchaser, without specifying who the
heirs were. Douglas was the father-in-law of E. K. Dor-
ity, and E. K. Dority claims that Douglas gave the
Beatty and Ingram 100-acre tract to his daughter, who
is the wife of E. K. Dority. He made her no deed to it,
however, and this suit is brought in the name of E. K.
Dority under his possessory title. So, it can not be
claimed that there is any record evidence showing title
in E. K. Dority to the so-called Beatty and Ingram
tract. Whatever title he has is by possession only.

Subsequently, in about 1904, E. K. Dority had a sur-
vey made of what he calls the Beatty and Ingram tract,
and it has been copied into the amended petition in this
case as showing the boundary he claims. It is evident,
however, that this survey is not made from any record,
but that the calls are arbitrary, and were made by the
surveyor as directed by E. K. Dority. The surveyor had
no deeds, plats, surveys, or other record evidence to go
by, and E. K. Dority does not show that the calls he
used were obtained from any record source, although he
made diligent search with that view in end.

It is also contended that E. K. Dority acquiesced in
the claims of his sister, Mrs. Slaven, and his brother,
to the property now sued for, until after his father had
divided his lands among his children in a way that dis-
pleased E. K. Dority; and that he then, for the first

time, laid a claim to the property now held by Mrs Slaven and his brother Emanuel Dority. There is some evidence to sustain this contention; and when it is taken in connection with the further fact that Mrs. Slaven lived upon the land which was given her by her father for more than ten years before E. K. Dority brought this suit, we are entirely satisfied that his alleged possession of this part of the land occupied by his brother and sister, was no possession at all.

Furthermore, it does not appear that E. K. Dority ever had any well-defined boundary or well-marked line to any of this land, except to about twenty acres, which he cleared and fenced, near the northern end of the 200-acre tract, and which in no way interferes with the land on the southern end of the tract, which is now the subject of this action. E. K. Dority never cleared or fenced more than twenty acres of that land. According to his own testimony the possession of the other part of the tract consisted in his cutting from it such timber as he might need for use or for sale. During, at least, ten years of this period, however, Mrs. Slaven and the other Doritys were doing the same thing with the southern end of the tract which they claimed.

The first question that is presented for decision is: Was there sufficient evidence of adverse possession in E. K. Dority for the statutory period of fifteen years, to warrant the court in submitting his claim to the jury?

The appellants trace their title to the land in controversy back to the Commonwealth; while the appellee rests his claim entirely upon possession. While it is true, the appellee testified that he owned and claimed this ground, which was within a well-defined boundary, it is apparent that he draws a conclusion in so testifying, without explaining what he means by a well-defined boundary. Mere intention, unaccompanied by an actual taking of possession which is hostile and can be seen by the world, will not carry possession beyond the lines indicated by actual visible possession—in this case the land cleared and enclosed. (Taylor v. Combs, 20 Ky. Law Rep. 1828.) Where one claims under color of title and is in actual possession of a part of the land within his boundary, the law, by construction, carries his possession to the full extent of his boundary; but, where he claims title by adverse possession only, he acquires no title to any land except that which is in his actual

possession. There can be no constructive possession without color of title. (Shackelford v. Smith, 5 Dana, 232.) The "squatters" sovereignty is confined to his dominion. Le Moyne v. Rountree, 135 Ky., 40, 45, from Whitley County, is very similar, in its controlling facts, to the case at bar. In that case Roundtree made no claim to the land in controversy, except by prescription, while Le Moyne established a complete and perfect paper title. In discussing the nature of Roundtree's possession, which was peculiarly like E. K. Dority's in this case, the court said:

"Except as to a small part (some 10 or 12 acres) of the land sued for which appellee testified to having fenced in and held and used, he showed no possession which would ripen into a title by the expiration of the statutory period. In 1890 he says that his father-in-law, Tom Meadors, put him in possession of a house on the Creekmore survey which the latter owned, and told him he could have it and the surrounding land, consisting of certain fields. He understood his father-in-law to make him a present of the land. The Creekmore survey was conterminous to the land in question, the public road, however, running between the two tracks. The possession which Meadors gave to his son-in-law is thus described by appellee himself: After having stated that his father-in-law gave him the land in controversy which he did not now own, and a part of his own land, he was asked this question: 'What did Tom Meadors say about this land in question? A. He just waved his hand up that way, and said I could have all that land. Q. Did he give you this land? A. Yes, sir; that is what I understood him. Q. What did you do, if anything, toward taking possession of the land or improving it? A. In the spring of 1890 I fenced up ten to twelve acres of it, and cleared a half or three-quarters of an acre.' The witness does afterwards say that he claimed all of the land to a well-defined boundary, but showed on cross-examination that he knew nothing of the lines, and more especially showed that he did not know whether the lines of the tract were marked or not. * * * The property was rough, uninclosed mountain land; and, while appellee shows that he occasionally cut timber and tan bark, and committed other occasional acts of trespass, he had no sort of actual occupancy except of the ten or twelve acres he says he inclosed."

· The facts of possession, as shown in this case, are no stronger than those just quoted from the opinion in Le Moyne v. Roundtree. After reviewing the cases upon the question, the court laid down the following rule to be applied to all cases of this character:

"We have never held that a mere trespasser could obtain a possessory title unless he claimed to a well-marked or well-defined boundary. His possession must be such as gives the world, and especially those in interest, notice of the extent of his claim; and then, if the owner stands by and allows the trespasser to occupy and claim his property for the full term of fifteen years; he loses it, and the trespasser, under the statute, obtains title to the extent of his possession. The appellee had no such possession as is necessary to the acquisition of title by prescription, and what he did upon appellant's land, according to his own testimony, did not give notice of his adverse holding, except to the few acres he inclosed. A wrong-doer cannot acquire title to another's land by occupancy without giving notice for fifteen years of what he is doing and claiming."

Under the facts as above stated, the court held that Roundtree's possession was not adverse beyond the few acres which he had actually cleared and cultivated. The same result must follow here. We think this rule of law is both applicable and controlling to the facts of this case.

E. K. Dority is not claiming under any title of record. He obtained a deed from Mrs. Bryant to the 100 acres which he now occupies, and the parol evidence in connection with his contract with Van Winkle and the note subsequently given thereunder to Mrs. Bryant, shows that he obtained only the surface right to the 100 acres of land which he now occupies and which does not over-lap the land in controversy. But he does not even rely upon that title; he rests simply upon his possession. We are of opinion that he did not make out such a case of possession that warranted the court in submitting his claim to the jury. His actual, adverse possession, as above defined, was limited to the twenty acres which he had fenced and cultivated on the northern end of the tract, and which in no way touched, or interfered with, the 145-acre tract, or the 36 1-2 acre tract to the south of him and which is now in controversy here. When his father bought the 145 acres from Mrs. Bryant in

1899, E. K. Dority not only followed the surveyors and helped run the lines, but he afterwards knew all about his father giving a part of that tract to Mrs. Slaven, and his building a house for her and her family thereon. And when E. K. Dority bought his 100 acres in 1900 from Mrs. Bryant, who held the legal title, it is perfectly clear that he intended to confine his claim to the boundary therein set forth. His failure to produce that deed strongly corroborates the claim of appellants, that the deed is in strict conformity with the VanWinkle contract and the Bryant note, and that they correctly show the extent of his claim and the character of his title.

We are of opinion that the circuit judge should have sustained appellants' motion for a peremptory instruction to find for them, and that the judgment in favor of appellee should be reversed. It is so ordered, with instructions to take further proceedings consistent with this opinion.