## Sackett v. Burt & Brabb Lumber Co.

(Decided November 26, 1912.)

### Appeal from Clark Circuit Court.

1. Land—Adverse Possession of—Effect of Deed to.—When a person claiming by adverse possession has a deed of record which describes the boundary by natural or artificial objects so that it can be run by a surveyor, and he makes an actual settlement, or enclosure within the boundary this will carry his possession to the extent of the boundary described in the deed.

2. Land—Evidence of Adverse Possession of.—Evidence of adverse possession for the statutory period, examined and held to authorize the verdict of the jury.

3. Boundary—When Call Will Not Reach Natural Object—Duty of Surveyor to Change Calls So As to Reach Natural Objects.—When a given call will not reach a natural object called for, it is the duty of the surveyor to change the calls so as to reach the natural object, and in an action for trespass, the calls of the deed not closing, instructions embodying this view of the law were properly given.

CLEON K. CALVERT, J. M. STEVENSON for appellant.

METCALF & JEFFRIES, JOUETT & JOUETT for appellee.

OPINION OF THE COURT BY JUDGE NUNN—Affirming.

This action was brought by appellant alleging that appellee committed a trespass upon his land and cut several hundred trees of the value of $2,300.00 and carried them away, and he asked judgment for their value. Appellee answered denying the trespass, and claimed that it had purchased the timber from one J. C. Napier the agent of the International Development Company or one of its agents who was at the time the owner of land from which the trees were cut. It denied that it cut or carried away the number of trees alleged or that they were of the value of more than five or six hundred dollars. It alleged that the owner of the land, International Development Company, had a title to the land superior to that of appellant; that it and its vendors had been in the actual adverse possession of the land to well defined and marked boundaries for nearly twenty years before the bringing of this suit; that it had a deed for 1,124 acres of land which gave a particular description of same, which was of record in the county court clerk's office and had been since 1899, and that they had had tenants in possession of it claiming the whole boundary from that time to the bringing of this action. The case was tried out upon these issues and the jury returned a verdict in favor of appellee.

Appellant asks a reversal of the case for two rea-

sons; first, because the verdict was flagrantly against the evidence upon the question of adverse possession; second, because the court erred in instructing the jury as to the measure of recovery. The court allowed him to recover only the value of the standing trees, and he claims he should have been allowed the value of the logs when received by appellee.

The testimony showed that appellant was the owner of the C. O. Lockard patent and the lands embraced therein. The patent contains the following:

"This plat contains in the whole 78,262 acres. There is deducted by estimate of the patented land in the said plat 32,147 acres. There is also deducted the following entries:" It continues by specifying twenty-seven surveys and the amount of each. It appears that shortly after that time William and Jacob Gross were living upon and owning two tracts of land within the boundary of the Lockard patent, which others had patented before the Lockard patent was issued, and that they, or, at least, one of them, William Gross, had extended his possession beyond the boundary of his patent upon what appeared to be vacant land; and in 1890 one of the Grosses obtained a patent for 150 acres of land and the other obtained a patent for 200 acres of land which covered all the apparently vacant land between their two old surveys. It is not clear from the testimony whether the land covered by the last two patents to the Grosses was vacant at the time the Lockard patent was issued, but the preponderance of the evidence is to that effect. In July, 1890, they sold and conveyed their whole lands to E. H. Patterson, trustee, and in August of that year Patterson conveyed them to the Kentucky Coal, Iron & Development Company. The deeds made by the Grosses to Patterson, trustee, covered 1,172 acres and included the land patented after the Lockard patent was issued as well as that patented before it was issued and which was expressly excluded therefrom. J. C. Napier was placed in the possession of this land by the Development Company, as its agent, and it appears from the testimony that the owner sold certain trees to Napier; that he cut, hauled and floated them to a certain point on the creek and sold and delivered them to appellee. From this statement it would appear that appellant, the owner of the Lockard patent, was entitled to the land covered by the two junior patents issued to the Grosses in 1890, unless the owner of the land has had

such actual possesion of it as required by the Statutes, for a term of at least fifteen years before the institution of this action.   The evidence is not very positive and specific on this point, but it tends to show that Napier and Culton, the agents of the land company, have had tenants in possession of this land yearly since 1899. The Grosses sold the land and executed a title bond prior to the date of their deeds.

In Burt & Brabb Lumber Co. v. Sackett, &c., 147 Ky., 232, it is said:

"When a person settles within a large boundary of wild, uncultivated, unenclosed vacant land, and builds a house or makes a clearing or an enclosure, he is only in the possession of so much of the land as he has enclosed or put in cultivation, unless he has also described by well defined or well marked boundaries a large body of land embracing his settlement or enclosure.   And if he has done this, his settlement or enclosure will carry his possession to the extent of his well defined or well marked boundary.   *   *   *   But when the person claiming by adverse possession has a deed of record, and this deed describes as do the Shell deeds the boundary by natural or artificial objects so that it can be run by a surveyor and he makes an actual settlement, or enclosure within the boundary this will carry his possession to the extent of the boundary described in the deed," &c. The last part of the above quotation applies to this case.   The owners had a deed calling for boundaries which a surveyor could take and run out the land. But appellant says that the calls of the deed will not close. This is true of a great many surveys and it often occurs that a given call will not reach a natural object called for.   In these cases it is the duty of the surveyor, under the law, to change the calls so as to reach the natural object and when this is done the survey in the case at bar will close.   The lower court gave this view of the law in its instructions and did not err in doing so.

Having arrived at the above conclusion, it is unnecessary to consider the other question raised as to whether the court should have directed the jury to give appellant the value of the timber standing or its value when cut into logs and delivered to appellee, as the jury found nothing for him.

For these reasons, the judgment of the lower court is affirmed.