### LeMoyne, et al. v. Neal.

(Decided February 4, 1916.)

#### Appeal from Whitley Circuit Court.

1. Adverse Possession—Color of Title—Possession.—If one, although without color of title, enters upon lands, which are not in the actual possession of the owner at the time, and resides thereon, or encloses a portion of same, and claims to own same to a well defined, marked boundary, he is in the actual possession of his close, and in the actual possession, by construction, to the well defined, marked line to which he claims.

2. Adverse Possession—Boundaries.—A sale and conveyance of lands, which one without color of title is residing upon and claiming to own to a well defined, marked boundary, is champertous, because in his adverse possession.

3. Adverse Possession—Adjoining Land Owners.—Where persons own adjoining tracts of land, and one of them, with the intention of enclosing only his own lands, and without any intention to hold

or claim any of the lands of his neighbor, but claims only to the true line, unintentionally appropriates some of the lands beyond the true line, he does not hold such lands so appropriated adversely.

4. Adverse Possession—Title.—Where one acting under a mistake, takes possession of the lands of another, believing it to be his own, up to a mistaken line, and claims and holds to it, his holding is adverse, and will ripen into a title if continued the statutory period.

5. Adverse Possession—Intention.—It is the intention and not the mistake which determines whether the holding is adverse or amicable.

HENRY C. GILLIS for appellants.

ROSE & POPE for appellee.

OPINION OF THE COURT BY JUDGE HURT—Affirming.

The appellants, John V. LeMoyne and two others associated with him, alleging that they were the owners and entitled to the possession of a very large tract of land in Whitley county, and that appellee, J. J. Neal, was wrongfully in possession and holding a portion of it against them, and had trespassed upon other portions of it by cutting and converting to his own use timber trees, which grew upon the lands, instituted this suit and sought the recovery of the possession of that portion which appellee had in his possession, and damages for the wrongful withholding of the possession and for the trespasses alleged to have been committed upon the lands.

The appellee, by answer ana amended answers, denied the ownership by appellant of the portion, which he had in his possession and upon which the alleged trespasses had been committed, and asserted ownership in himself to sixty acres of the land, which was the portion, which he had in his possession, and from which he had cut and converted to his own use the timber trees. He based his claim of ownership upon the claim of an actual, adverse, visible, notorious, continuous and uninterrupted possession of it by himself and those under whom he claimed title, for fitfeen years preceding the filing of the action against him, attended by a claim of ownership to it, to a well-defined, marked boundary.

He, for further defense, claimed that he was in the actual adverse possession of the sixty acres of land at the time it was sold and conveyed to appellants, and

for that reason the sale and conveyance to them was champertous and void.

By reply, and by agreement that the affirmative allegations of the answers and amended answers should be considered as controverted upon the record, the ownership of the land by adverse possession by the appellee, and, also, the claim of champerty in the sale and conveyance to appellants were put in issue.

A trial resulted in a verdict of the jury in favor of the appellee, and a judgment of the court in accordance therewith. The appellants' motion and grounds for a new trial being overruled, they brought the case by appeal to this court; which reversed the judgment and remanded it for another trial, and for proceedings in conformity to the opinion, which may be found in 158 Ky., 316.

The error relied upon for a reversal of the judgment was the misinstruction of the jury by the court as to the principles of law, which were applicable to the case. It was insisted that the appellee, in the trial court, had failed to prove his claim of possession for the statutory period, to a well-defined and marked boundary, and, in fact, did not offer proof showing his claim to be a well-defined and marked boundary at all, and further, that he had, while in possession, leased the land from appellants' predecessors in title, and had never given notice to them of his hostile holding, and for that reason his holding was not adverse, and that, while it was claimed by appellants that appellee had executed a writing to their predecessors in title, by which he had leased the land, and to which writing appellee plead *non est factum*, and the court below had instructed the jury upon the issue, there was also evidence tending to show that appellee had leased the land, by parol contract, and the court should have also instructed the jury in a way to give them the benefit of such contention. This court sustained the contentions of the appellants, and directed the trial court as to the instructions which should be given upon another trial, if the evidence upon such trial was such as to justify the instructions indicated.

Upon the return of the case to the court below, another trial was had, and the evidence offered, in the opinion of the circuit court, being sufficient to warrant the giving of the instructions suggested by this court, the court below so instructed the jury.

The jury again returned a verdict for the appellee, and a judgment was, in accordance with it, rendered in his favor, and from it the appellants have again appealed.

The reasons now assigned for a reversal of the judgment are:

First—That the court erred in overruling the motion of appellants for a direct verdict in their favor, at the close of all the evidence.

Second—That the verdict of the jury is contrary to law and the evidence, and is not supported by the weight of the evidence.

The reasons urged why the court should have required a direct verdict from the jury in favor of appellants are:

(1) That admitting all of the evidence for appellee to be true, that he failed to show any facts which would conduce to prove his claim of possession of the land, to a well-defined and marked boundary, for the statutory period necessary to vest title in him; and, (2) that appellee's own testimony conclusively proves that his holding of the land in dispute was not adverse to the title of appellants.

The appellants showed a complete record title from the Commonwealth to them. The court instructed the jury to find for appellants if it believed from the evidence that the land in controversy was embraced by the patents and deeds under which appellants claimed, unless it should believe as set out in instructions two and three.

By instruction two the jury was directed, that if it believed from the evidence that the appellee, and those, through whom he claimed, were, for a period of fifteen years or more next before the commencement of the action, in the actual, open, notorious, continuous and peaceable possession of the lands, claiming them to a well-defined and marked boundary, to find for appellee, unless the jury should believe as in instruction five.

Instruction three directed the jury, that if it believed from the evidence, that at the time the predecessor of appellants in title executed and delivered to him the deed conveying the land in controversy, the appellee was in the actual, adverse possession of the land and claiming it to a well-defined and marked boundary, then the deed

was champertous and void, and to find for appellee, unless it should believe as in instruction five.

Instruction five was to the effect, that if the jury believed from the evidence that the appellee occupied the lands under a written or verbal contract, by which he agreed to hold the lands as the tenant of appellants' predecessors, that his holding was not adverse, and the jury must not find for appellee on account of his claim of possession or champerty in the conveyance to appellants.

By another instruction, adverse possession, as used in the instructions, was defined to be an actual, adverse possession, manifested by acts or facts sufficient to indicate to others that appellee, in fact, had the possession and that the ousted claimant had been dispossessed.

The appellants do not claim that, either they, or their predecessors in title, had, prior to the entry of appellee upon the land in controversy, ever made any entry upon the tract of land claimed by them, at any point within their boundary, so as to be in the actual possession, by construction, of their entire boundary, to the extent of their deed, and hence, when appellee entered, although without color of title, and resided upon and enclosed a portion of the lands in dispute, and claimed same as his own, to a well-defined and marked boundary, he was in actual possession, by construction, to the well-defined and marked boundary to which he claimed, if there was such a boundary.

The evidence for appellee tends to show that D. B. Neal, the father of appellee, and who resided upon an adjoining tract of land to the one in dispute, had claimed to be the owner of the lands in controversy for about twenty-five or thirty years, prior to the year 1894, but in the latter part of that year or early in 1895, one Gilreath, who was claiming under one Stephens, who claimed to be the owner of the land or to have some authority over it, entered upon the land in controversy and erected a house and cleared four or five acres of it, but did this over the protest of D. B. Neal, and as a consequence of the protest of Neal, Gilreath, about the close of the year 1895, delivered the key to his dwelling to appellee, and moved away and delivered the possession to appellee. Appellee, to whom D. B. Neal then gave the land, by parol, put one Morgan upon the land and in the house as his tenant thereon, and he remained there several

months and then left it and appellee then immediately moved into the house and has resided upon the land since, with his family, and has cleared and fenced more of the land, until there are now ten or fifteen acres cleared and twenty-five or thirty acres enclosed with fencing. Appellee had erected another house upon the land and put out an orchard, several years before the commencement of the action. When D. B. Neal gave the land to his son, the appellee, he went upon it with him and showed to him the boundary of it and the marked line which surrounded it, and appellee has claimed to be the owner of it ever since, to the boundary shown him by his father; that the corner trees to the boundary of the land, with the exception of one, which has been cut down and the stump of it remains, were all marked in the ordinary way as corner trees are marked to land boundaries; that the corner tree which has been cut down, when standing, was marked in the same way; that all of the lines surrounding the lands are marked upon the trees along the lines sufficiently to enable one to follow the line around the tract and to locate the boundary by the markings upon the trees, by which the lines pass. All of the markings upon the trees appear to be very old, and were there before Gilreath entered upon the land, and was the same marked line to which D. B. Neal had claimed for many years. It is apparent that the evidence going to uphold the contention that the land is surrounded by a well-marked and well-defined boundary is sufficient to take the case to the jury, and there being no evidence to the contrary, the verdict of the jury, if it found that there was a well-defined and marked boundary, was not contrary to the evidence and was sufficient to support the verdict.

The deed under which appellants claim title was made and delivered in the year 1900, at a time when appellee was residing upon the land with his family, and had several acres enclosed, and was engaged in clearing more of it of its trees, and using it in every way as his own, and claiming it, as he testifies, to the well-defined and marked boundary. This evidence is undisputed, and if appellee's holding was adverse; that is, if he was claiming and holding it as his own and hostile to the title of appellants and their predecessors, there can be no doubt that the appellants' title was champertous as to the land in controversy, and their action must fail.

The contention of appellants, that the holding of appellee was not adverse to their title, and hence could not ripen into a title in himself, because he had executed a· writing, by which he had become their tenant or had made a verbal contract with appellants' predecessors, by which he became their tenant, was put squarely in issue in the evidence and by the instructions. The evidence upon that issue was contradictory. The jury was instructed, that if appellee had made either a verbal or written contract, by which he had agreed to hold as the tenant of appellants' predecessor in title, it could not find a verdict for him, either because of his possession for the statutory period or because of champerty in the sale and conveyance to appellants. Two juries, upon this issue of fact, returned verdicts for the appellee.

It is insisted, however, upon this appeal that the testimony given by the appellee himself shows that he entered upon the lands in the mistaken belief, that the lands were covered by the Allen Marlow fifty-acre survey and were embraced within the deed from Sal Moore and others to D. B. Neal, and that he had no intention of holding or claiming the lands, unless they were included in the survey and deed. The rule, that "where the occupation of land is by a mere mistake, and with no intention of the occupant to claim as his own, land which does not belong to him, but only to claim to the true boundary, wherever it may be, the holding is not adverse," is invoked. It is true that such rule prevails where persons own adjoining tracts of land, and one of them, with the intention of enclosing only his lands, and claiming ownership only to the true line, and without any intention of claiming or holding any of the lands of his neighbor, unintentionally appropriates some of the land beyond his boundary. In such case he does not hold adversely. To such effect are the holdings in the cases of Reed v. Gilliam, 140 Ky., 824; Small v. Hamlett, 24 R., 238; Ross v. Veach, 22 R., 578; McKinny v. Kenny, 1 A. K. M., 461; Hunter v. Chrisman, 6 B. M., 466; Bates v. Pigman, 145 Ky., 837, and Turner v. Morgan, 158 Ky., 512, which were cited by appellants in support of their contention, and to the same effect Holmes v. Herringer, 12 R., 22, 13 S. W., 359, and Rudd v. Monarch, 32 S. W., 1083, 17 R., 893. These cases, however,· do not seem ·applicable to the case at bar. The case of Cuyler v. Bush, 27 R., 148, at first blush, would appear to support appel-

lants' contention, but an examination of the facts of that case demonstrates that it was decided correctly, but its principles are not to be applied to this case. In the case, *supra,* a gift was made to one of a tract of land to be selected by the donee, without the line of a certain boundary of land. The donee, by mistake, and without any intention to hold or claim any land upon the other side of the line, selected a tract, which, in part, lay upon the side of the line which he was expressly informed that the land selected by him was not to be, he believing at the time, that it was upon the side of the line where he was directed to make an appropriation. He never claimed any land beyond the line designated, and when he became aware that he had, by mistake, appropriated some land beyond the line, he repudiated his action. In cases of controversy between adjoining landowners, where one has, by mistake, appropriated some of his neighbor's lands, a different rule applies from the one held in the cases, *supra,* where the intention of the one appropriating the land is different. The rule may be found in 1 Cyc., 1038, and, also 2 C. J., Sec. 245, and was cited and approved in Turner v. Morgan, *supra,* and is as follows:

"Where a person acting under a mistake as to the true boundary between his land and that of another, takes possession of the land of another, believing it to be his own, up to a mistaken line, claiming title to it and so holding, the holding is adverse, and if continued for the requisite period, will give title by adverse possession." Liter v. Sherley, 35 S. W., 550; Louisville Property Co. v. Quinn, 94 Ky., 310; Hawkins v. Walker, 15 S. W., 519; Summers v. Green, 4 J. J. M., 137; Scheible v. Heart, 12 S. W., 628, 11 R., 607.

In 2 C. J., Sec. 243, it is said:

"The theory upon which these decisions proceed is, that in cases of mistake as to the true line between adjoining lands, the real test as to whether or not a title will be acquired by a holding for the period prescribed by the statute of limitations, is the intention of the party holding beyond the true line. It is not merely the existence of a mistake, but the presence or absence of the requisite intention to claim title that fixes the character of the entry and determines the question of disseizin."

The character of the possession is determined by the intention and not by mistake. 2 C. J., Sec. 245. The

appellee testified that he took possession of the land under a parol gift from his father. He manifested his intentions in the most visible and notorious manner, by physically appropriating the property to his own use. He resided upon it, built houses, cleared the land, sold the timber trees, made fences, enclosed the land, and cultivated the lands. He resisted the attempt of Stephens to take it from him and refused the demand of the appellants' predecessor for authority over it. He testified that he was claiming it as being the Marlow fifty-acre survey and included in the Sal Moore deed to his father. He, doubtless, claimed to own it because he believed that it was the Marlow fifty-acre survey, and upon the first trial of this case he was yet claiming that it was such and that it was covered by the Sal Moore deed. Although he has, since the beginning of this litigation, become convinced that it is not covered by the Sal Moore deed, he took possession of it believing it to be his own, claiming title to it and so held it. There is nothing in his evidence to indicate that he ever contemplated, that there could be any mistake as to its being the Marlow survey and covered by the Sal Moore deed, until he had held the land for the statutory period of limitation. He was so holding it when appellants' deed was executed. Such holding was adverse. It is insisted that he said in 1899, that he did not intend to hold it if it was not the Marlow survey, but he insisted and he still insists that it is the Marlow survey. He never expressed any doubt of that fact, until since the pendency of this suit, and the surveyors were not able to locate it as that survey or to find that survey. It was reputed to be the Marlow survey in the neighborhood, and there is no satisfactory evidence in the record that it is not the Marlow survey. Under the rule held in Turner v. Morgan, *supra,* if his testimony is to be believed, he was in the adverse possession of the land from the beginning of his occupancy of it, by tenant, and his statement, that in 1908 he determined to hold the land, whether it was covered by the Sal Moore deed or not, could not change his holding from a hostile one to an amicable one. The court was not in error in denying the motion for a direct verdict. The issues in the case were fairly submitted to the jury, including appellee's intentions in holding the land.

The judgment is therefore affirmed.