## Kentweva Coal & Lumber Company v. Helton, et al.

(Decided May 16, 1916.)

### Appeal from Leslie Circuit Court.

1. Boundaries—Calls—Monuments.—Courses and distances are controlled by marked corners and fixed monuments, and where a call in a patent will not reach the natural object called for the call should be changed so as to reach that point.
2. Boundaries—Corners—Evidence.—In an action to enjoin trespass where the defendant claimed under a superior patent, the fifth call of which is "Thence N. 69 E. 64 poles to a poplar and a large rock by the side of the path," evidence considered and held to show that what was known as the "Upper rock and poplar," as claimed by plaintiff, and not the "Lower rock and poplar," as claimed by defendant, is the sixth corner of the survey.
3. Boundaries—Description—Construction—Evidence of Location.—That construction which is most against a party claiming under an uncertain survey should be adopted, and under no circumstances ought a doubtful title prevail against a clear one.

METCALF & JEFFRIES and LEWIS & LEWIS for appellant.

CLEON K. CALVERT and A. B. DIXON for appellees.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY, COMMISSIONER—Reversing.

Plaintiff, Kentweva Coal & Lumber Company, brought this suit against defendants, Robert Helton and Elisha Helton, to enjoin them from trespassing on a tract of land claimed by plaintiff and lying in Leslie county. Defendants denied plaintiff's title and pleaded title in Robert Helton. Being denied the relief prayed, plaintiff appeals.

Plaintiff claims under the A. W. Chastain patent No. 43,383, issued in the year 1870. Defendant, Robert Helton, claims under the Aaron Brock patent No. 32,303, issued in the year 1851. Since the Brock patent is superior to the Chastain patent, the case turns on whether or not the disputed land which is included in the Chastain patent is also covered by the Brock patent.

The land covered by the Brock patent is described as follows:

"Beginning at a chestnut oak, four dogwoods, maple and ash and to include the place where said Brock now lives; thence N. 69 E. 30 poles to 2 white oaks on the bench of a ridge; thence N. 29 E. 54 poles to 3 maples and sour-wood; thence N. 73 E. 160 poles down the main fork to a stake; thence N. 52 E. 84 poles to a stake; thence N. 69 E. 64 poles to a poplar and large rock by the side of the path; thence N. 50 poles to a stake; thence S. 69 W. 105 poles to a stake; thence S. 52 W. 192 poles to a stake; thence S. 83 E. 237 poles to the beginning."

The surveyor's plat on the certificate of survey shows the third line to run "N. 73 W. 160 poles" instead of "N. 73 E. 160 poles down main fork to a stake." However, it seems to be conceded by the parties that if the third line be run according to the plat it will not run down the main fork or any fork of Marrowbone, but will run up the long fork of Marrowbone. Furthermore, it will not reach any of the natural objects called for. That being true, it is practically admitted that the course of the third line as fixed by the plat is not correct. However, it may be stated that if the patent is laid according to the plat it is a long distance away from the land in dispute. As tried in the court below, there appears to have been no dispute respecting the proper location of the first, second and third corners. Both the fourth and fifth calls are for stakes. The sixth call is as follows: "   *   *   *; thence N. 69 E. 64 poles to a poplar and large rock by the side of the path." Hence the parties appear to agree that the location of the sixth corner is conclusive of the controversy. Near the present dwelling house of Robert Helton is a very large rock standing beside the path leading up and down Marrowbone Creek. Nearby is the stump of a poplar tree which was marked as a corner tree many years ago. This poplar and rock are referred to as the "upper poplar and rock" and are claimed by plaintiff to be the sixth corner of the Aaron Brock patent. About a half mile to the east on Pound cliff is another large rock and beside it the stump of a poplar. This rock and poplar are referred to as the "lower rock and poplar," and are claimed by defendant to be the sixth corner.

When we come to consider these locations, the following facts appear: If we follow the courses and dis-

tances for the third, fourth and fifth lines they will not lead to the upper rock. It can only be reached by disregarding the course of the fifth line and substituting therefor another line, with the course reversed and slightly changed, and proceeding from that corner according to the course and distance of the sixth line. If we do this and run the sixth line north 50 poles in order to get back to the beginning point, the seventh line practically corresponds with the patent call, while the eighth line is lengthened from 192 poles to 308 poles. On the other hand, we find that if the third, fourth and fifth calls of the patent be followed they will lead to a point very near the "lower rock and poplar." If from this point we proceed on the sixth call to a point 50 poles north, we find that the seventh line of the patent will be 115 poles long, while the eighth line will be 463 poles, instead of 192 poles, long, thus giving to this line an excess in length of about 271 poles, or more than three-fourths of a mile. If, however, we proceed from the seventh corner according to the courses and distances of the patent, the beginning corner of the patent will never be reached, but the ninth line will lead to a point almost a mile due east from the beginning corner. When we come to consider the evidence bearing on the location of the sixth corner we find that beside the upper rock is a well defined path which was generally used by the people in traveling up and down the creek. It also clearly appears that the poplar tree was marked as a corner tree. Furthermore, all the older citizens who are acquainted with the Aaron Brock survey testify unequivocally to the fact that Aaron Brock always claimed, and the people generally recognized, the "upper rock and poplar" as a corner of that survey. On the other hand, we find that the regular pathway leading down the creek at the point where the "lower poplar and rock" are situated is at the bottom of the cliff and some distance away. There is some evidence of a path near this rock, but many of the witnesses testify that the physical conditions show that it was used by animals and very little, if at all, by persons. The only person who testifies to the lower poplar's being marked as a corner tree is a witness who cut the tree down and who claims to have seen two marks on it. This same witness also testifies emphatically to the fact that the "upper rock and poplar" are a corner of the Brock survey. The evidence

that the "lower rock and poplar" were claimed by the patentee, or generally recognized, as a corner, is practically neglible and by no means convincing.

Counsel for appellee earnestly insists that the "lower poplar and rock" should be adjudged to be the sixth corner, because the third, fourth and fifth calls of the patent lead to that point and not to the "upper rock and poplar." The difficulty with this proposition is that if we follow the third, fourth and fifth calls to reach the "lower poplar and rock," we cannot reach the beginning point of the survey if we follow the sixth, seventh, eighth and ninth calls from that point. On the contrary, we reach a point about one mile due east from the beginning corner. It is true we may reach the beginning corner, but we can only do so by extending the eighth line for about three-fourths of a mile. Under these circumstances, we cannot give any more effect to the third, fourth and fifth calls than to the sixth, seventh, eighth and ninth calls, and the fact that the third, fourth and fifth calls run to the "lower rock and poplar" can not be regarded as conclusive of the location of the sixth corner at that point. Nor do we regard as controlling the fact that the course of the fourth line will have to be changed in order to reach the "upper poplar and rock," for it is well settled that courses and distances are controlled by marked corners and fixed monuments, and where the call in a patent will not reach the natural object called for the call should be changed so as to reach that object. Taylor & Crate v. Forester, 148 Ky. 201, 146 S. W. 428; Sackett v. Burt & Brabb Lumber Company, 150 Ky. 748, 150 S. W. 997; Rush v. Cornett, 169 Ky. 714. In view, therefore, of the overwhelming evidence in favor of the "upper rock and poplar," and the very slight and unsatisfactory evidence in favor of the "lower rock and poplar," we conclude that the trial court should have adjudged the "upper rock and poplar" to be the sixth corner of the Brock survey. But even if we were less certain as to the soundness of this conclusion, we would be compelled to resolve the doubt in favor of plaintiff, under the well established rule that that construction which is most against the party claiming under an uncertain survey should be adopted, and that under no circumstances ought a doubtful title prevail against a clear one. Pearson v. Baker, 4 Dana 321; Preston's Heirs v. Bowmar, 2 Bibb. 492; Combs v. Val-

entine, 144 Ky. 184, 137 S. W. 1080; Kentucky Coal & Timber Development Co. v. Carroll Hardwood Lumber Company, et al., 154 Ky. 523, 157 S. W. 1109. It follows that the trial court should have rendered judgment in favor of plaintiff.

Judgment reversed and cause remanded, with directions to enter judgment in conformity with this opinion.