## Swift Coal & Timber Company v. Ison.

(Decided November 8, 1929.)

R. MONROE FIELDS for appellant.

SAMUEL M. WILSON, DAVID HAYS, FELIX G. FIELDS and STEPHEN COMBS, Jr., for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Reversing

This action involves the title to approximately 100 acres of land on Bill Harris branch of Line fork of the North fork of the Kentucky river in Letcher county. Appellant (plaintiff below) claims under a survey for 18,-000 acres made October 6, 1873, on which a patent issued March 2, 1874, to William M. Lloyd. Appellee claims under a deed executed by the heirs of Gideon Ison, Sr., to Gideon Ison, Jr., March 14, 1870, a survey for 200 acres made in the name of Gideon Ison, Jr., November 25, 1873, and a deed from Gideon Ison, Jr., to him dated July 11, 1903, and adverse possession for more than 30 years. It is not disputed that the Lloyd patent covers and embraces the land in controversy, or that appellant now holds the title thereto by a complete chain of recorded conveyances. And it may be stated that there is

no proof that appellant, or any or either of its vendors, ever had the actual possession of the land in controversy, and that no acts of physical ownership of the land in controversy were ever exercised by appellant or its vendors until shortly before the institution of this action, when it had the land surveyed and its lines marked and painted.

On September 9, 1838, Gideon Ison, Sr., obtained a patent for 50 acres of land; on April 1, 1844, a patent for 1,000 acres; on April 2, 1844, a patent for 200 acres; on April 4, 1844, a patent for 50 acres; on the same day another patent for 100 acres; on October 23, 1846, a patent for 100 acres; on October 4, 1846, a patent for 100 acres; on July 19, 1861, a patent for 100 acres; and on October 10, 1873, a patent for 200 acres. These nine patents join, or overlap, and cover land on both sides of Line fork and its branches. The land in controversy is within neither of these surveys, but lies between the 100-acre survey of April 4, 1844, and the 50 acres of the same date on the west, and the 100-acre survey of October 23, 1846, on the east.

Gideon Ison, Sr., died some time in the year 1862, and on March 14, 1870, his children and heirs at law executed to his son, Gideon Ison, Jr. (father of appellee), a deed for a boundary of land described as follows: "Beginning on a sarvis on the south side of Line Fork, thence straight across Line Fork down said Line Fork making said fork the line to opposite a spur where there is a brush fence, the same being a conditional line made between the said Gideon Ison and Bony Ison; thence up said spur to the outside line of said Gideon Ison, deceased; thence with said line up Line Fork and with said line around to the top of a ridge called the Deep Hole Spur to the beginning." Neither appellee or his surveyor, nor any witness for him attempts to locate this boundary, nor is it shown on any map in the record. However, it is contended in brief for appellee that it embraces the land in controversy. Elijah Ison, who was born five years after the deed was made, while giving his deposition in this case, was handed that deed, or a copy of it, and was asked to read the description of the land therein described and to say whether it embraced the land in controversy. He answered: "Yes, sir, that is my judgment about it." That is the only evidence in the record concerning the location of that deed boundary. The court has carefully considered that deed. The location of the boundary therein described cannot be determined by any testimony

in the record; nor can it be said, with any degree of certainty, that it embraces the land in controversy.

Its location being doubtful, the doubt must be resolved against it under the well-established rule that that construction which is most against the party claiming under an uncertain survey should be adopted and that under no circumstances ought a doubtful title prevail against a clear one. Preston's Heirs v. Bowmar, 2 Bibb, 493; Kentweva Coal & Lumber Co. v. Helton, 170 Ky. 211, 185 S. W. 838; Bryant v. Terry, 189 Ky. 489, 225 S. W. 242. Therefore appellant must be adjudged the land in controversy under its prior patent unless its right of entry has been barred by the junior patent relied on by appellee and the actual possession claimed to have been maintained by him and his vendors within its exterior lines for more than 30 years. This junior patent was granted to Gideon Ison, Jr., son of Gideon Ison, Sr., under a survey in his name made November 25, 1883, for 200 acres of land. This survey was made and patent issued 21 years after the death of Gideon Ison, Sr., and 13 years after his children and heirs at law executed the deed to Gideon Ison, Jr. It overlaps both the Gideon Ison 1,000-acre survey of April 1, 1844, and the 100-acre survey of April 4, 1844. It lies wholly within the Lloyd survey and patent. The land in controversy is the land within this junior patent of 1883 and outside the senior patents granted Gideon Ison, Sr.; and that part of the "old field" hereinafter referred to, which extends within this junior patent, is the possession relied on by appellee to sustain his plea of adverse possession to the land in controversy.

The proof shows that many years prior to the Civil War Gideon Ison, Sr., settled on Line Fork, built his residence within his 1,000-acre survey of April 1, 1844, and continued to live at that place and in that house until his death in 1862. Some time after he settled there, but just when is not shown, he cleared and inclosed around his house a field of some 8 or 10 acres in extent. This clearing and inclosure extended also within his 50-acre survey of 1838 and his 100-acre of April 4, 1844, and extended into and includes about one acre of what is now the land in controversy. That inclosure was maintained continuously from that time on, and was there when this suit was commenced. Appellee's witness Jesse Ison, who was born in 1850, and who knew the field from his earliest recollection, said it was an old field when he first could

remember, and that he "always heard that Gideon Ison, Sr.," made it. Jonah Cornett, also a witness for appellee, first saw the field in 1879 or 1880, and he says it was then "an old field." Matt Fields, a witness for appellee, born in 1855, and who gave his deposition in 1924, said he had known the field 45 years and that it was an "old field" when he first knew it. There is no evidence to the contrary. We must conclude, therefore, that this field was cleared and inclosed about the time of or prior to the Civil War, if we would not be authorized to assume that it was made shortly after the making of the surveys of 1844. At the time Gideon Ison, Sr., extended this clearing and inclosure beyond the lines of his 1,000-acre survey and 100-acre survey of 1844, and into what is now the land in controversy, the land was vacant. Other than his patent of 1838, and his patents of 1844, from which this field extended, he had no patent or deed indicating or limiting the extent of his claim. Consequently his right to claim extended no further than his clearing and inclosure and his inclosure limited the extent of his possession. This inclosure had been made more than 15 years at the time Gideon Ison, Jr., made the survey on which he procured his junior patent of November 25, 1883; and the question is then presented as to whether this improvement constitutes an entry within the junior patent so as to extend the possession thus acquired by construction to the exterior lines of the junior patent.

When Gideon Ison, Jr., obtained his junior patent of 1883, which embraces, as we have seen, parts of his 1,000-acre survey and 100-acre survey of 1844, and the inclosure just referred to, to all of which he then had good title, this junior patent did not in and of itself have the effect of putting him in possession of any land embraced within the Lloyd, Sr., survey, because, under express provisions of section 4704, Kentucky Statutes, then in force, "every entry, survey, or patent made or issued under this chapter shall be void, so far as it embraces land previously entered, surveyed or patented."

Therefore it was necessary, in order to put Gideon Ison, Jr., in the adverse possession of any part of the Lloyd patent to the extent of his junior survey, that he should make an actual entry, accompanied by physical as well as open and visible acts of adverse possession on the Lloyd patent and within the lines of his junior survey outside the lines of his senior survey and the inclosure extending beyond them. Whitley County Land

Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2; Bowling v. Breathitt Coal, Iron & Lumber Co., 134 Ky. 249, 120 S. W. 317.

It is well settled that, before one can acquire an actual possession of land to which he has no title, he must enter thereon with the intention of holding it. If he is without color of title, he must claim to a well-marked and plainly defined boundary, in which case he is in actual possession of such portion as he actually reduces to his possession, and in actual possession by construction to the extent of his well-marked and plainly defined boundary, unless the land is in the actual possession of another, in which event his actual possession only extends to his inclosure. LeMoyne v. Meadows, 156 Ky. 832, 162 S. W. 526; Burt & Brabb Lumber Co. v. Sackett, 147 Ky. 232, 144 S. W. 34; New Domain Oil & Gas Co. v. Gaffney, 134 Ky. 792, 121 S. W. 699. On the other hand, if the entry be made under color of title, with the intention to hold to the extent of the boundary therein described, he will be actually possessed of so much of the land as he actually reduces to his possession, and possessed by construction of the remainder, unless the land is, at the time, in the actual adverse possession of another, in which case he will be confined to his close, or unless the land is embraced within a superior title and the entry is outside the interference. Taylor & Crate v. Burt & Brabb Lumber Co., 109 S. W. 348, 33 Ky. Law Rep. 191; Slaven v. Dority, 142 Ky. 640, 134 S. W. 1166; Burnett v. Miller, 174 Ky. 91, 191 S. W. 659; Bird v. McHargue, 182 Ky. 27, 205 S. W. 957; Moren v. Houston, 222 Ky. 785, 2 S. W. (2d) 667. The difference between the character and effect of the modes of entry is that one without color of title claiming beyond his clearing or enclosure, must indicate the extent of his claim by a plainly marked line. This is the act or fact giving notice of his claim. On the other hand, one who enters under color of title may claim to the lines of the boundary therein described.

It is to be observed that, as to that part of the old field or inclosure which extended beyond his patent boundaries, Gideon Ison, Sr., was a mere squatter; and, being without color of title (that is an instrument describing the boundary and defining the extent of his possession) his possession extended no further than, and was limited by, his inclosure. Caughlin v. Wilson, 167 Ky. 35, 180 S. W. 40; Stearns Coal & Lumber Co. v. Boyatt, 168 Ky. 111, 181 S. W. 962; Le Moyne v. Neal, 168 Ky. 292, 181 S. W. 1119.

410

Long before Gideon Ison, Jr., made the survey of 1883, his title to so much of the inclosure made by his father as extended within this junior patent had matured even against the commonwealth, and was not affected by the patent granted to William M. Lloyd in 1873. The making of this junior survey gave no additional strength to his title to that inclosure, but it did give him color of title to the land embraced by it outside of the senior survey and the inclosure, which, if followed by an entry on it outside of the land to which he already had title, would give him actual possession of so much of it as he cleared or inclosed and actual possession by construction of the remainder, since, at that time, there was no actual possession in any person under the Lloyd survey and the junior survey was entirely within the Lloyd boundary. Trimble v. Smith, 4 Bibb, 257; Whitley County Land Co. v. Powers' Heirs, supra; Tennis Coal Co. v. Sackett, 172 Ky. 729, 190 S. W. 130, Ann. Cas. 1917E, 629.

But there is absolutely no evidence in this record that the clearing and inclosure made by Gideon Ison, Sr., was ever extended by his son, Gideon Ison, Jr., or by appellee. No other or further entry was made inside the junior survey after it was made and the patent issued except for the purpose of cutting and removing timber, and this, as has been repeatedly held, is not sufficient to establish adverse possession. Therefore, appellee's only claim to possession of the land in controversy is merely constructive and comes from the record title of the junior survey. At that time, however, those claiming under the Lloyd patent were in the constructive possession, and the law does not recognize a constructive possession of the same land, at the same time, in two adversary claimants; in such case, the senior title prevails. Jones v. McCauley's Heirs, 2 Duv. 14; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2.

In the opinion in the case of Elliott v. Hensley, 188 Ky. 444, 222 S. W. 507, 511, there appear some expressions apparently in conflict with the views herein expressed. In that case Robinson, the adversary claimant, had acquired by purchase in 1876 from Gilbert a senior patent to which he obtained good title. Having settled on it shortly after his purchase, he proceeded to build on it a house and some outbuildings and make a clearing which extended into a patent in the name of De Groot belonging to the defendant. In 1885 Robinson made a junior survey in his own name, which embraced practi-

cally all of his Gilbert patent as well as part of defendant's De Groot patent. In this connection the court said:

"It will be observed that the entry of Robinson in this De Groot patent was made before he obtained his color of title patent, and if he had not obtained this patent his right to hold any part of the De Groot land under an actual entry would have been confined to the lines of his clearing and cultivation. But, when he obtained the color of title patent, this clearing and cultivation placed him in the possession of the De Groot patent, in which the entry was made to the line of his color of title patent. . . .

"Nor is it indispensable to put an adverse claimant under a color of title deed or patent in possession to the lines of his deed or patent that he should make an entry and take actual possession after he obtains it. It will be sufficient if it appears, as in this case, that the adverse claimant before he obtained his color of title patent made an actual entry and took actual possession of the vacant land of another within the lines of the color of title patent thereafter obtained, if it further appears that his actual adverse possession, made before he obtained his color of title patent, was continued without interruption up to the time the color of title patent was issued, and thereafter maintained for a sufficient length of time."

In that case the clearing which he had extended into the De Groot patent had not been made more than nine years at the time Robinson procured his junior survey, a time insufficient to mature his title.

Therefore, regardless of whether the learned writer of that opinion meant that the entry and possession within the De Groot survey from 1876 until 1885 could be tacked onto a subsequent period sufficient in time and character of holding to mature title against those claiming under the De Groot survey, or meant that an actual adverse holding and possession within the De Groot survey should continue for the statutory period from and after the issual of the junior patent, the facts in that case do not fit the facts here.

In this case title to the inclosure which extended into the land in controversy had matured long prior to the issual of the junior patent in the name of Gideon Ison, Jr., and at the time of the issual of that patent title to the inclosure was as complete as that held under the senior

patent. The possession had and held at the time of the issual of the junior patent being then on land to which appellee's vendor had good title, could not be extended to land embraced by the junior survey without a further entry within it and outside of the inclosure thereon to which title had previously matured.

It follows from what has been said that the court erred in adjudging the land in controversy to appellee except as to that part of the clearing and inclosure made by Gideon Ison, Sr., above referred to.

Wherefore the judgment is reversed, with directions to ascertain by survey the courses and distances of the lines and the area of the old field and inclosure made by Gideon Ison, Sr., which extends within the land in controversy, and to adjudge that to appellee and the remainder to appellant, and for proceedings consistent with this opinion.