### Cumberland Coal Company, et al. v. Croley, et al.

(Decided November 16, 1916.)

Appeal from Knox Circuit Court.

1. Appeal and Error—Finding of Chancellor.—Where the evidence is conflicting and the mind is left in doubt as to the truth, the findings of facts by the chancellor will not be disturbed upon appeal.

2. Adverse Possession—Patent—Possession.—One living upon and controlling a junior patent is in possession only of that part of same which is not covered by senior patents in the possession of others, unless he enters within the interference and takes actual possession of some part of the interference and claims to a well defined or plainly marked boundary.

3. Witnesses—Testimony as to Statement of Deceased Person.—Witnesses, although not parties to the action who are interested as warrantors of the title of one of the litigants to the land involved, are incompetent to testify as to statements alleged to have been made to them by their grantor who is dead when their evidence is given, the party claiming adversely not having been present when the statements are alleged to have been made.

B. B. GOLDEN and BLACK, BLACK & OWENS for appellants.

W. R. LAY for appellees.

OPINION OF THE COURT BY JUDGE CLARKE—Affirming.

The title to two small, but evidently valuable, tracts of land in Knox county is involved in this record of 1256 pages, and the vital issue is about the proper location of the beginning corner and the first two calls in the deed dated September 13, 1871, from Tarlton Lunsford to Richard Ricketts, which are described as follows:

"Beginning on a chestnut oak standing on a cliff; thence with said Lunsford's outside line to two chestnuts; thence with same to a large poplar."

Appellees contend that a marked chestnut oak snag on a high cliff near the top of the mountain, and near a line of John Alford's 200-acre patent, is the beginning corner described in the Ricketts deed, and that the Alford patent line is the Lunsford outside boundary line referred to in that deed. Appellants contend that a fallen chestnut oak near the edge of a small cliff and near a line of a 377-acre patent issued to Lunsford on December 14, 1865, is the beginning corner described in the Ricketts deed, and that the Lunsford outside line referred to in that deed is the outside line of this 377-acre patent. The two chestnut oak trees claimed by the parties to be the beginning corner of the Ricketts deed are about forty poles apart, and the land in controversy is of triangular shape and inclosed upon the east by a line connecting these two chestnut oak trees, upon the northwest by the Alford patent line and upon the southwest by the Lunsford 377-acre patent lines, the lines of these two patents converging at a point between the two chestnuts, the second corner, and the poplar, the third corner in the Ricketts land. Both of these chestnut oak trees claimed to be the beginning corner in the Ricketts deed are marked as corner trees, and both of them can

possibly be said to be on a cliff, although the one claimed by appellants is upon a very small cliff, if it may be rightly called a cliff at all, but assuming that they both answer the description in the deed, let us now see which of the two lines, the Alford or the line of the 377-acre Lunsford patent, was in fact the outside boundary line of Lunsford at the time he made this conveyance.

Lunsford owned at the time a large body of mountain land. A 200-acre patent issued to him April 27, 1854, not only covered the land in controversy but overlapped the Alford patent which was the senior patent of the two, and the Alford line rather than the 377-acre patent line was the outside boundary line of the lands to which Lunsford had title, and it would seem clear that the chestnut oak snag and the lines as claimed by appellee were the beginning corner and first two lines described in the Ricketts deed, but this seemingly simple proposition is, to say the least, involved in some doubt by the fact that a short time before the deed was made by Lunsford to Ricketts, he had his land surveyed and marked by processioners, and in so doing followed the outside lines of the 377-acre patent rather than the outside line of his 200-acre patent, and if the processioners' line is taken as his outside line, the deed to Ricketts did not include the land in controversy, and the fallen chestnut oak contended for by appellant, as the beginning corner, is more probably the correct corner.

It seems strange upon the one hand that Lunsford would have permitted the processioners to run as his outside boundary line the lines of the 377-acre patent, when under his 200-acre patent of older date, he had title to the land in controversy not covered by the 377-acre patent, but possibly covered by a junior patent to Elihu Cox, and it is equally as strange that if he meant this processioners' line to be his outside boundary line that he did not refer to that line as such in the deed to Ricketts and in a deed to Elihu Nelson for the land adjoining, made upon the same date, and within less than a month after the processioners' line had been run.

The report of the processioners was filed and recorded in the county court clerk's office, but it was not signed and attested by Lunsford or any of the parties owning adjoining land, as the statute then in force required should be done before it would be binding upon any of the parties. Since therefore it was not binding

upon any of the parties it is of no effect insofar as this controversy is concerned, unless it can be said to illustrate which line was meant by the parties in the deed as the outside boundary line of Lunsford. In our opinion it cannot serve even this purpose because of the fact that no reference whatever is made in the deed to a processioners' line having been run. We are therefore inclined, on the face of the papers, supported by the evidence that the chestnut oak snag is upon a high cliff, while the fallen chestnut oak is upon a very low cliff, if upon a cliff at all, to accept the contention of appellee as was done by the chancellor. And this position finds strong support from the evident construction placed upon the deed by the parties as illustrated by their acts with reference to the disputed land. The evidence shows rather conclusively that the land conveyed to Ricketts by Lunsford was marked by line trees so as to include the land in controversy, and that Ricketts and those claiming under him to have claimed and been in possession of the boundary thus marked continuously since the deed was executed in 1871, and that Lunsford never thereafter did anything inconsistent with their ownership. Upon the other hand even if we are unable to harmonize to our entire satisfaction the processioners' line with the other facts in the record, we cannot give to it a preponderating effect, and the most that can be said for it is that it leaves the mind in some doubt as to what was meant by "Lunsford's outside line" in the deed to Ricketts, but if we give to the chancellor's finding any weight whatever, as we must do under the decisions of this court in Wathen v. Wathen, 149 Ky. 504; Norris v. Isaacs, 149 Ky. 709; Salyer v. Hawkins, 147 Ky. 487, and many other cases, we are even under this view of the testimony not authorized to disturb his judgment. So we conclude the chestnut oak snag on the cliff is the beginning corner, and the Alford patent line is Lunsford's outside line referred to in the deed to Ricketts.

2. Appellant also relies upon, as defenses, the plea that the deeds to appellees were champertous and that it has title to the land in controversy by reason of adverse possession for the statutory period, but neither of these defenses is sustained by the evidence, since to sustain either plea appellant must have been in actual possession of the land in controversy as it was covered

by the 200-acre Lunsford patent of which he was in pos-session and under which appellees claim, which is a sen-ior patent to the Elihu Cox patent under which appell-lants claim, and it is admitted by appellants' agent and witness, Marsee, that appellant and those through whom it claims had no actual possession of any of the land in controversy, but only such possession as followed the actual possession of that part of the Cox patent outside of the interference. This possession, however, did not cover the land in controversy, if in fact the Cox patent included the land in controversy, which is doubtful, be-cause, as before stated, this land was covered by the 200-acre Lunsford patent, which was senior to the Cox patent and in the possession of Lunsford. It has long been the established rule in this state that one living upon and controlling a junior patent is only in posses-sion of that part of same which is not covered by senior patents in the possession of another, and that to be in possession of the portion thus covered by a senior pat-ent, the junior patentee must enter within the interfer-ence and take actual possession of some part of the in-terference and claim to a well defined, plainly marked boundary. Trimble v. Smith, 4 Bibb 257; Richie v. Ows-ley, 137 Ky. 63, S. C. 143 Ky. 1; Whitley County Land Co. v. Power's Heirs, 146 Ky. 813; Hopson v. Cunning-ham, 161 Ky. 163.

3. Exceptions were filed by appellant to the deposi-tions of the following witnesses who testified for appel-lees: Richard Ricketts, Wm. Killion, T. M. Trosper, U. M. Blakeley, G. B. Detherage and James Bays, upon the ground that they were interested witnesses testify-ing about conversations had with Tarlton Lunsford, who was dead at the time their testimony was given. The court overruled all these exceptions, and in this ruling we think the chancellor was correct except with reference to the testimony of Richard Ricketts, U. M. Blakeley and James Bays, of conversations with Lunsford. As to these three witnesses upon that question he was in error since they were interested witnesses, although not parties to this action, as warrantors of the title held by appellees; and their testimony of statements made by Lunsford to them not in the presence of the adverse claimants is incompetent. Civil Code, Section 606, sub-section 2; Howell v. Salt Lick Lumber Co., 121 S. W. 645; but this error does not affect our conclusions since

the testimony of competent witnesses of what Lunsford said in reference to which chestnut oak is the true corner is so conflicting as to be of no value in deciding the question.

Wherefore the judgment is affirmed.