## Morgan v. Moseley.

(Decided December 9, 1924.)

### Appeal from Leslie Circuit Court.

1. Adverse Possession—Finding for Claimant on Theory of Tortious Entry on Land Outside Disputed Strip, Held Erroneous.—Finding for plaintiff, in action to quiet title, on theory that neither he nor predecessor showed title to any part of land, so that his entry thereon, though outside disputed strip, was tortious as to every part, and reduced to his possession entire tract described in his deed, held erroneous, in absence of evidence that such predecessor, who actually lived on land outside disputed lap, did not acquire title thereto by adverse possession.

2. Adverse Possession—One Entering Parts of Tract, with Intent to Hold Possession to Boundaries of Instrument Giving Color of Title, has Constructive Possession of Remainder.—One entering on tract with intent to take possession to boundaries of instrument giving color, is in actual possession of portion occupied, and constructive possession of remainder, if not in another's possession.

3. Adverse Possession—Grantees Entering Land Outside Disputed Lap, while Adverse Claimants were in Possession Under Patent, did Not Gain Possession of Lap.—Entry of land outside disputed lap under deed, while adverse claimants were in possession under patent from Commonwealth, did not give grantees possession of land within lap.

4. Adverse Possession—Long Continued Possession, with Usual Acts of Ownership, Justifies Presumption of Lost Grant.—Long continued possession of realty, accompanied by usual acts of ownership, justifies presumption of lost grant to occupant, though presumption is less readily indulged against state than individual.

5. Adverse Possession—Possession Essential to Presumption of Lost Grant.—Though doctrine of presumed lost grant is distinct from that of limitation, possession is essential to presumption.

LEWIS & LEWIS for appellant.

CLEON K. CALVERT and L. D. LEWIS for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Reversing.

This is an appeal from a judgment quieting the title of Elihu Moseley to a tract of land in Leslie county.

Moseley derived title in the following way: A great many years ago, Stokely Bowlin settled on a tract of land now claimed by Moseley, and another tract adjoining. His residence was near the residence now occupied by Moseley. Upon the death of Bowlin, the title passed to his two children, John Bowlin and Lucy Bowlin, who divided the land, Lucy taking the part now claimed by Moseley, and John the adjoining tract. Some time before the Civil War, Lucy Bowlin married C. H. Godsey, and they continued to occupy the tract allotted to her. When the Civil War began Godsey entered the Confederate army, and died before the end of the war in a Union prison. During the war Lucy and her children continued to occupy the land. At the conclusion of the war she married John Roberts and continued in the occupancy of the land until February 6, 1882, when she sold and conveyed it to Henry Moseley, the father of appellee. Henry Moseley moved into the house occupied by Lucy and continued to reside there until December 27, 1883, when he died intestate in the house which he had built just below, and in sight of the one in which Lucy lived. At his death the title passed to his widow and children, who continued in the occupancy of the land until they conveyed their interest to appellee.

On the other hand, appellants have shown title from John Bowlin, to whom a one hundred acre patent, No. 23549, was issued on a survey dated February 7, 1839, and they and those through whom they claim have been in possession of the patented boundary for more than forty years.

There is a conflict between appellant's deed and appellee's deed, and the only controversy is over the land common to both.

It is conceded that neither appellee, nor those through whom he claims, ever made an actual entry within the lap until a short time before this action was instituted.

The chancellor found for appellee on the theory that neither he nor Lucy Bowlin showed any title to any portion of the land, and, that being true, his entry upon the land, though outside of the lap, was tortious as to every part thereof, and had the effect of reducing to his possession the entire tract described in the deed. For aught that appears in the record Lucy Bowlin, who actually lived on the land outside of the lap, may have acquired

title thereto by adverse possession, and the facts do not justify the conclusion that the entire title which she conveyed was invalid. Furthermore, the law of possession, under color of title, has been settled by a long line of decisions, and is well stated in the case of Tennis Coal Company v. Sackett, 172 Ky. 729, 190 S. W. 129, in the following language:

> "One having a color of title may have an actual possession, by construction, to parts of a tract of land by entering thereon with the intention to take and hold possession to the extent of the boundaries of the deed, patent, or other instrument which gives color of title. He is then in the actual possession of the portion of the premises which he occupies and in the actual possession, by construction, of the remainder of the tract, where same is not in the possession of another."

For the purposes of this case it is sufficient to say that at the time the Moseleys entered under their deed, appellant's predecessors in title were in possession of the land covered by their patent from the Commonwealth. That being true, the entry of the Moseleys outside the lap did not give them possession of any of the land within the lap.

But, it is sought to uphold the judgment on the ground that the facts are such as to justify the presumption of a lost grant. The rule is that a long continued possession of real estate, accompanied by the usual acts of ownership, justifies the presumption of a lost grant of the property to the occupant. United States v. Chavez, 175 U. S. 509, 44 L. Ed. 255. "Presumptions of this nature are adopted from the general infirmity of human nature, the difficulty of preserving muniments of title, and the public policy of supporting long and uninterrupted possessions. They are founded upon the consideration that the facts are such as could not, according to the ordinary course of human affairs, occur, unless there was a transmutation of title to, or an admission of, an existing adverse title in, the party in possession." Ricard v. Williams, 7 Wheat. (U. S.) 59, 5 L. Ed. 398. While the presumption is less readily indulged against the state than against an individual, Wilson v. Stoner, 9 Serg. &c. R. (Pa.) 39, 11 Am. Dec. 664, the rule has been applied after a very long period of peaceable pos-

session. Jarboe v. McAtee, 7 B. Mon. 279. But, it must not be overlooked that although the doctrine of a presumed lost grant is distinct from that of limitation, possession is absolutely essential to give rise to the presumption. Casey v. Inloes, 1 Gill. 430, 39 Am. Dec. 658; Craig v. Austin, 1 Dana 517; Clark v. Faunce, 4 Pick. (Mass.) 245. No such long continued possession to a well-defined boundary on the part of Stokely Bowlin prior to the grant to John Bowlin was shown as would authorize the presumption of a grant from the Commonwealth, and since that time neither the Bowlins nor the Moseleys have ever had possession of the land in controversy. That being true, there is no basis whatever for the presumption that appellee, or those through whom he claims, ever acquired title by a lost grant or other conveyance.

It follows that appellant's title to the land in controversy should have been quieted.

Judgment reversed and cause remanded with directions to enter judgment in conformity with this opinion.