## Pendergrass, et al. v. Swiss Oil Corporation.

(Decided December 14, 1926.)

### Appeal from Lee Circuit Court.

1. Estoppel—Remote Grantees, Claiming Under Deed Referring to Partition Judgment, Making D.'s Title Superior, Acquired no Title as Against Remote Grantees of D.—Remote grantees, claiming land conveyed by D. before conveyance by H.'s heirs, through whom grantees claimed, which conveyance referred to judgment in partition suit between H.'s heirs and D.'s grantee for description of land conveyed, acquired no title as against remote grantees of D., where, by judgment in partition suit referred to, land previously conveyed by D. fell within portion allotted to D.'s grantee.

2. Adverse Possession—Defined Boundaries of Land, Claimed Under Color of Title, Failed Against Superior Title, where There had Been no Entry and Possession on Interference.—Where there had been no entry and possession on the interference, rule that, where one claims under color of title, possession of part of land extends to full extent of defined boundaries did not apply and defined boundaries failed as against those having superior title.

3. Estoppel—Remote grantees, claiming land under chain of title were estopped by claim of title of record, relied on by them, to claim that remote grantees of D. failed to establish D.'s title.

4. Mines and Minerals—Parties Counterclaiming in Suit to Quiet Title Must Recover on Strength of their Own Title.—Where plaintiffs sued to quiet title to certain tract, parties counterclaiming, to be adjudged owners of minerals under surface, had to go further than to establish that plaintiffs did not own it.

5. Mines and Minerals—Where Plaintiffs were Adjudged Owners of Surface, but Not of Minerals, and Counterclaims for Both Surface and Minerals were Dismissed, Relief Granted was Sufficient. —In suit to quiet title, judgment quieting title to surface, but not to minerals under it, and finding that parties filing counterclaims had not manifested right to either surface or minerals, and dismissing counterclaims, held to grant sufficient relief.

L. G. CAMPBELL, A. F. BYRD and ROBT. H. WINN for appellants.

E. L. McDONALD, E. C. O'REAR and HUGH RIDDELL for appellee.

OPINION OF THE COURT BY COMMISSIONER SANDIDGE—
Affirming.

Appellee, Swiss Oil Corporation, instituted this action in the Lee circuit court against a number of defendants to quiet its title to a tract of land particularly de-

scribed, containing 240 acres. There are a number of appellants who were defendants below, and, since it appears that several of them claim their rights under title in D. P. Pendergrass, and a number of them claim their rights under title in H. G. Crabtree, for convenience the parties will be referred to hereinafter as the oil company, Pendergrass and Crabtree, it being understood that when the latter two are named all parties claiming rights under them are included. Pendergrass answered denying the oil company's right to have its title quieted as to a particular 8-acre tract included in the 240-acre tract described in the petition, asserting ownership thereof in himself, and by way of counterclaim asking that his title be quieted. Crabtree answered denying the oil company's right to have its title quieted as to a certain 12-acre tract lying within the 240-acre boundary described in the petition, asserting ownership thereof in himself, and seeking to have his title quieted. Other defendants filed answers setting up adverse claims to portions of the 240-acre tract described in the petition, but compromises were effected before the trial hereof below as to all of them. Upon the trial below, on the issues made as between the oil company and Pendergrass and Crabtree, the chancellor concluded that it had manifested its right to have its title of the surface of the 240-acre tract of land quieted; but that it had failed to manifest its right to have its title to the minerals in and under it quieted, and entered judgment accordingly. On the counterclaim of both Pendergrass and Crabtree the chancellor was of the opinion that they did not manifest their right to the relief sought, either as to the surface or minerals of their respective tracts of land, and dismissed both of the counterclaims. The appeal has been prosecuted by Pendergrass and Crabtree from that judgment, and the oil company has prosecuted a cross-appeal from that part of the judgment dismissing its petition in so far as it sought to have its title of the minerals in and under the 240-acre tract of land quieted.

We shall address ourselves first to the appeal of Pendergrass and Crabtree from the judgment dismissing their counterclaims. In the course of the consideration of the case it develops that the basic patent upon which the title of the three parties hereto is founded has been a fruitful source of litigation for many years. On January 4, 1786, the Commonwealth of Virginia, acting

through Patrick Henry, the then governor, granted to John Carnan a patent for 29,823 acres of land lying on Kentucky river in what was then Fayette county, Virginia. Appellants insist that they introduced into the record herein the evidence of a perfect chain of title from the Carnan patent to themselves for the respective tracts of land claimed by them; and that nothing may be found in the record to upset their title so established. Kentucky Land & Immigration Company v. Crabtree, an opinion by this court rendered October 14, 1902, which may be found in 113 Ky. 992, is one of the many cases in which this court has dealt with disputed land boundaries where titles were based upon the Carnan survey. Appellants have filed in this record exactly the same muniments of title that were filed in that action by which the title of a portion of the Carnan survey passed through many intervening owners and rested in David Pryse. Many objections to the intervening links in the chain of title were offered in that action, and the history of the devolution of title from Carnan, the original patentee, to David Pryse was recited in that opinion. The objections were rejected and that was held to be "a perfect chain of title." In the subsequent case of Courtney v. Ashcraft, 105 S. W. 106, the same chain of title from Carnan to David Pryse was again approved by this court. The chain of title from the Carnan grant to David Pryse was again approved by this court in Kentucky Land & Immigration Company v. Sloan, 78 S. W. 175. Crabtree and Pendergrass filed as evidence in this record the various deeds and transfers of title from David Pryse to themselves under which it is asserted that they respectively became the owners of the tracts of land claimed by them herein, and insist that they thereby have established their title and right to be adjudged the owners thereof. They vigorously insist that in view of the three opinions of this court, *supra*, wherein that portion of their chain of title by which their title was linked to the grant by the Commonwealth and passed from Carnan to David Pryse was expressly approved and held to be "a perfect chain of title," all questions that might arise as to the validity of any of the links of that portion of their chain of title has been forever settled and put at rest. If we should concede that to be true, it would also be true that no one claiming under that chain of title could claim title to land not covered by or embraced within the respective convey-

ances and other means by which the title passed from one
to another. The tract of land covered by the Carnan
patent is a parallelogram in shape, approximately seven
miles long by five miles wide. The Kentucky river forms
its southern boundary, the distance which it runs with the
river being five miles when reduced to a straight line. On
May 10, 1793, John Carnan conveyed 17,823 acres of his
patent to Thomas Flahaven, the boundary being estab-
lished by running a line through the survey N. 9 W. from
a point on the Kentucky river and parallel with the two
long outside lines of the original tract, the boundary con-
veyed being the eastern portion of the survey and 920
poles in width. Reference to the opinion in Kentucky
Land & Immigration Company v. Crabtree, *supra,* will
disclose that subsequently the tract so conveyed to Fla-
haven was divided and its western half was allotted to
the heirs of James Haggin, deceased, by commissioners
appointed for the purpose, who reported at the February
term, 1853, in an action then pending in the Fayette cir-
cuit court. Crabtree and Pendergrass claim title to the
8 and 12 acre tracts of land respectively under the title
so acquired by Haggin's heirs. The oil company's claim
to title of the 240-acre tract of land is founded upon a
deed made by Thomas Duckham to Oliver Crawford
October 16, 1839. The land in dispute, title of which is in
controversy, is conceded by all parties to lie within the
Carnan survey and within that portion of it conveyed by
him to Thomas Flahaven, as above stated. Appellants
to establish their title to it must manifest that it is also
included within the land allotted to the heirs of James
Haggin in the action in the Fayette circuit court to which
reference has been made. That action seems to have in-
volved conflicting claims to various portions of the Fla-
haven tract asserted by many claimants. The action in
the main seems to have had for its purpose a partition of
the Flahaven tract between Daniel Breck and the heirs
of James Haggin. We gather from a consideration of
the portion of that old record which was filed in evidence
herein that Breck's ownership of a half interest in the
Flahaven tract was founded upon a conveyance to him by
Thomas Duckham. It appears from the judgment ren-
dered therein, a copy of which was filed in evidence
herein, that, prior to the date on which commissioners
were appointed to divide the Flahaven tract between
Breck on the one part and the Haggin's heirs on the other,
certain conveyances of certain portions thereof had been

made by Duckham and others; and in directing the commissioners how to partition the land the court adjudged that it should be divided as nearly as possible so that any conveyances or contracts to convey made by Duckham prior to his sale to Breck would fall within the portion of the Flahaven tract which they would allot to Breck. They were directed to make actual surveys of all such conveyances, as well as certain other conveyances that had been made, by which portions of the Flahaven tract passed from the ownership of Breck, or the heirs of Haggin, or those under whom they claimed, so that the court might determine whether the division had been so made that in the tract allotted to Breck all previously made conveyances by him or those under whom he claimed had been properly charged to the moiety of the Flahaven tract allotted to him, and whether all tracts previously conveyed by those under whom Haggin's heirs claimed had properly been charged to the moiety allotted to them. There is on file herein as evidence a copy of the commissioners' report of the division and allotment made pursuant to that judgment. In response to that portion of the judgment which had directed the commissioners to make survey and show on their map all previous conveyances, it is recited that on account of the trouble and expense involved the parties to the action and their attorneys had agreed that a survey of the tracts conveyed by Duckham might be dispensed with because the parties were sufficiently familiar with their location to understand that the principal portion of them were located within the boundary of the lots assigned by the partition to Breck. That report of sale appears to have been regularly filed in the action then pending and to have been confirmed by the court by an order duly entered. Thus it appears that by the judgment of the court in which Haggin's heirs were adjudged the particular boundary of land allotted to them and by the report of the commissioners under which the boundary of their tract was described by metes and bounds the validity of previous conveyances made by Thomas Duckham was expressly recognized and the allotment of the particular boundary to them in that action was made subject to the exclusion of any portion thereof that previous conveyances by Duckham might cover. In other words, by the judgment in that action and by the commissioners' report which allotted to the heirs of Haggin a particular bound-

ary of land they acquired no title to any portion thereof covered by conveyances previously made by Thomas Duckham. The tract of land allotted to Haggin's heirs was the western portion of the Flahaven tract and contained approximately 8,000 acres, and its boundary is given by metes and bounds in the commissioners' report above mentioned. That report was filed at the February term, 1853, of the Fayette circuit court and was confirmed on the 22nd day of June, 1853. On October 16, 1839, the Thomas Duckham, above mentioned, conveyed a. large boundary of land lying within the Carnan patent to Oliver Crawford, described: "Beginning at Cole's line at Beale's rock house; thence with the ridge to the mouth of Little Sinking, crossing the mouth; thence round with the ridge between Little and Big Sinking to Billy's fork of Miller's creek; thence down Billy's fork to Cole's line; thence back with Cole's line to the place of beginning." The testimony of the various surveyors who made surveys and prepared maps showing the location of the lands in dispute herein without difference of opinion establishes that about 50 acres of the tract of land allotted to Haggin's heirs, as above indicated, is included within the boundary of the deed from Duckham to Crawford, *supra*. The northern boundary of the tract of land allotted to Haggin's heirs was the north line of the original Carnan survey. The western line is the western line of the boundary deeded by Carnan to Flahaven. All of the maps on file herein seem to agree as to the location both of the northern line of the Carnan survey and of the western line of the Flahaven tract, the corner made by the juncture of those two lines being the northwest corner of the boundary of land allotted to Haggin's heirs, as above indicated. As their surveys are shown by the maps on file herein, the surveyors all seem to agree that the dividing ridge between Big Sinking creek and Little Sinking creek, which forms the eastern boundary of the tract of land conveyed by Duckham to Oliver Crawford in 1839, under the description quoted above, crosses the Flahaven line, running in a general northwest direction, and then crosses the northern Carnan line in such a way as to cut off and leave lying west of that ridge approximately 50 acres of land. The 12-acre tract claimed by Crabtree and the 8-acre tract claimed by Pendergrass both lie immediately west of that ridge and between it and the Flahaven line on the one side and the Carnan line on the other, that ridge forming the eastern boundary

of both tracts. They claim their title to their respective tracts of land under devolution of title from the Haggin heirs. The deed by which the title acquired by Haggin's heirs under the allotment above passed to the next in line of the titleholders through whom Crabtree and Pendergrass claim expressly referred to the judgment of the Fayette circuit court and the commissioners' report filed "at its February 7 term, 1853," for the description of the land thereby conveyed. Reference to that report and to the judgment of the court under which it was made as hereinbefore shown discloses that the tract allotted to Haggin's heirs expressly excluded any portion of previous conveyances made by Thomas Duckham within the boundary of the tract allotted to them. It follows, then, that since the evidence herein establishes beyond contradiction that the extreme northwest corner of the tract allotted to Haggin's heirs was covered by the deed made by Thomas Duckham in 1839 to Oliver Crawford, being that portion thereof which lies west of the dividing ridge between Big Sinking and Little Sinking creeks, under the division and allotment Haggin's heirs acquired no title to any portion thereof; and the deed by which the land they had so acquired passed to the next owners in the chain of title under which appellants claim conveyed no title to any of it. While the boundary of the tract allotted to Haggin's heirs as its outside boundary lines were defined covers the 50 acres lying west of that dividing ridge, under the judgment directing the division and allotment and under the commissioners' report dividing the Flahaven tract between Breck on the one part and Haggin's heirs on the other, any portion of the tract allotted to the latter which had previously been conveyed by Duckham was expressly excluded and reserved. Hence, Haggin's heirs appear to have acquired no title to the extreme northwest portion of the large boundary of land allotted to them which lies west of the dividing ridge between Big Sinking and Little Sinking creeks, and none of their successors in title down to and including Crabtree and Pendergrass, by the conveyances and other means of passing of title relied upon by them, have acquired title to any portion thereof. Hence, appellants wholly failed to establish their right to the relief sought by them herein; that is, to have it adjudged that they respectively own the legal title of the 12 and 8 acre tracts of land, because it appears that both of those tracts of land in whole lie west of the dividing ridge between Big

Sinking and Little Sinking creeks. No entry upon or possession of the tracts of land claimed by them is manifested by the evidence herein sufficient to give them title by adverse possession. Their claims to title by possession are founded upon possession under color of title claiming to the well defined boundary of their deeds. As was written in Ramsey v. Hughes, 212 Ky. 715:

> "The rule is that where one claims under color of title and is in actual possession of a part of the land within his well defined boundary, the law, by construction, carries his possession to the full extent of his boundary, except that as against actual, adverse possession this rule will not prevail, and except that as against superior title this rule will not prevail unless the entry and possession be upon the interference."

Many opinions of this court supporting the rule are referred to in the Ramsey opinion, *supra*. The record affords no evidence of entry or possession upon the part of Crabtree or Pendergrass, or any of their predecessors in title, west of the dividing ridge between Big and Little Sinking creeks. Their efforts to extend such possession as they and those under whom they claim have had of other portions of their well defined boundaries to include possession under their well defined boundaries of the lands west of the ridge fail because that rule never prevails against superior title unless the entry and possession be upon the interference. The chain of title under which they claim, as has been shown, recognizes the validity and superiority of the title owned by others of the land lying west of that ridge. Consequently the chancellor properly dismissed the counterclaim of both Crabtree and Pendergrass by which they sought to have it adjudged that they own the 12 and 8 acre tracts of land respectively and to have title quieted.

The 240-acre tract claimed by appellant lies wholly within the boundary of land conveyed by Thomas Duckham to Oliver Crawford in 1839, the boundary of which has been quoted above. On October 26, 1875, Oliver Crawford conveyed a portion of the tract of land he so acquired to Jacob Crabtree, and the description given in the deed of conveyance was sufficiently ambiguous that it gave rise to several subsequent actions. See Smith v. Wallace, 100 S. W. 1186, and Ashcraft v. Cox,

three opinions reported respectively in 50 S. W. 986, 76 S. W. 121, and 77 S. W. 718. In an action to enforce payment of the purchase money lien reserved by Crawford in the conveyance to Crabtree that tract of land was sold and was purchased by E. R. W. Cox; and it was conveyed to him by the master commissioner of the Lee circuit court on October 17, 1885. The eastern boundary of the tract conveyed by Crawford to Crabtree called for certain cliffs rather than for the dividing ridge between Big Sinking and Little Sinking creeks, as it was described in the deed from Duckham to Crawford; and that was largely responsible for the controversies in the actions decided by the opinions, *supra*. However we may view the controversy presented by the parties to this appeal as to the extent to which E. R. W. Cox acquired title by his purchase at the commissioners' sale, *supra*, whether merely to the sandstone cliffs, east of Little Sinking creek, as Crabtree and Pendergrass contend, or whether to the dividing ridge between the two creeks, as the oil company contends, seems wholly immaterial, in view of the fact that subsequently Cox obtained title to all of the land lying between the sandstone cliffs and the dividing ridge between the two creeks mentioned by deed from James B. Sizemore, sheriff of Lee county, dated November 2, 1905. It had been levied on and sold by the sheriff under an execution and was purchased by and conveyed to E. R. W. Cox. The title of the land between the sandstone cliffs and dividing ridge so acquired by Cox is connected by the evidence on file herein with the title acquired to it by Crawford by his deed from Duckham. On November 21, 1923, Cox conveyed the 240-acre tract of land described in the oil company's petition to Millard F. Cable. Prior to this conveyance a survey was made and the deed contained a description of the tract of land by metes and bounds according to the field notes of the survey. Cable in turn conveyed it to the oil company. The parties are agreed that the tract of land as bounded and described in the latter two deeds covers both the 12 and 8 acre tracts claimed by Crabtree and Pendergrass, respectively: as they also are agreed that the boundary conveyed by the deed from Duckham to Crawford in 1839, which runs with the dividing ridge between Big Sinking and Little Sinking creeks, covers them. Under the facts appearing herein, above set forth, as between the oil

company, claiming under Duckham, and Crabtree and Pendergrass, claiming under Haggin's heirs, since the judgment and commissioners' report, on which the title of the latter to a portion of the Carnan survey is founded, expressly recognized Duckham's title of and right to have conveyed such portions of the Carnan survey as he had conveyed, Crabtree and Pendergrass can not be heard to say that the oil company failed to establish title in itself by failing to supply the evidence connecting Duckham's title with the grant by the Commonwealth to Carnan. They are estopped by the chain of title of record relied upon by them. Consequently their efforts by the appeal to reverse the judgment in so far as it adjudged the oil company to own the surface estate in the 12 and 8 acre tracts respectively are not sufficient.

For the reasons indicated the judgment will be affirmed on the appeal.

On the cross-appeal the oil company insists that the chancellor erred in not adjudging it to own the minerals in and under its 240-acre tract of land. The chancellor's judgment dismissing the oil company's petition, in so far as it sought to be adjudged to own the minerals in and under its 240-acre tract of land and to have its title thereof quieted, seems to have been founded upon this fact appearing in the record: The deed by which Duckham conveyed the tract of land to Crawford in 1839 contained this provision: "Reserving all mines and minerals in the bowels of the earth." As between appellants, Pendergrass and Crabtree, and appellee, the oil company, this court has concluded that it will be unnecessary, under the facts appearing in this record, to consider and determine the consequences flowing from the quoted portion of that deed. Whether under all the facts surrounding the transaction which appear in the record, those words effected a severance of the surface and the mineral estates or not we have concluded it is unnecessary to determine. If a severance was effected so that the judgment of the chancellor is correct in refusing to adjudge the oil company to be the owner of the oil and minerals in and under the tract of land described in its petition, that fact is not sufficient to justify a judgment that Crabtree and Pendergrass are the owners thereof. It has hereinbefore been demonstrated that, under the chain of title by which they assert their ownership of the 12 and 8 acre tracts respectively and the minerals thereunder, they do not own them. They made their

answers counterclaims against the oil company, and, to establish that they were entitled to the relief that they sought by their counterclaims, it was incumbent upon them to go further than to establish that the oil company did not own either the surface or the mineral estate in the 240-acre tract of land. The judgment herein which dismissed their counterclaims and thereby decreed that Crabtree and Pendergrass own no interest in either the surface or the mineral estates in the 12 and 8 acre tracts claimed by them respectively gave to appellee, the oil company, all the relief that any judgment which might be rendered herein could give. The question that might arise, if it should be determined herein that the quoted portion of the deed from Duckham to Crawford effected a severance of the mineral and surface estates is a question that can properly be determined only in an action between the oil company and those to whom the mineral estate belongs if the severance be held to have been effected. For that reason the court concludes that it is unnecessary to discuss and determine the questions presented by the oil company's cross-appeal. The oil company appears to be in possession of the 240-acre tract. All relief that it could obtain in so far as its rights are affected by the claims of appellants, Pendergrass and Crabtree, has been afforded by the judgment appealed from by Pendergrass and Crabtree which is herein affirmed. That is true because they have been adjudged to have no valid claim to ownership or possession of either the surface or mineral estates in the 12 and 8 acre tracts, and consequently can not interfere with the oil company in any use to which it may put them. For that reason it is deemed to be unnecessary on the cross-appeal to grant the oil company further relief.

For the reasons indicated, the judgment herein will be affirmed on both the original and the cross appeals.

Judgment affirmed.