### Maynard et ux. v. Lowe.

(Decided October 25, 1929.)

W. K. STEELE for appellants.

STRATTON & STEPHENSON for appellee.

OPINION OF THE COURT BY COMMISSIONER TINSLEY— Reversing.

On July 17, 1920, the appellant Flem Maynard and his wife, Belle Maynard, by deed of that date sold to R. L. Williamson and W. T. Varney a tract of land in Pike county on the head of Scott's branch of Brushy fork of John's creek, containing 50 acres more or less. The consideration for this conveyance was $20 per acre, of which the sum of $500 was paid in cash, and the balance was to be paid on or before April 8, 1921. On March 12, 1924, appellant instituted this suit against Williamson and Varney to recover the balance of purchase money and to subject the land to its payment; it being alleged in the petition that there were 57 acres of the land and the balance of purchase money due therefor was $640. On November 17, 1924, Williamson and Varney filed an answer and counterclaim, to which a demurrer was sus-

tained, and on November 22, 1924, they filed an amended answer, which was made a cross-petition against the appellee, J. M. Lowe, in which, among other things, they alleged that, at the time of the execution of the deed by appellant and his wife to them, Lowe was claiming the land and the title thereto, and was in the possession thereof, and had held the actual adverse possession for more than 15 years; that appellant had never put them in possession of the land, and was unable so to do. They asked that Lowe be made a party defendant and be required to set up his title. On April 7, 1925, Lowe filed his answer, in which he denied appellant's title, pleaded title in himself, and further pleaded that for more than 15 years he had been in the actual, open, uninterrupted, exclusive, hostile, and adverse possession of the land, and prayed that his title thereto be quieted. Appropriate pleadings completed the issue, and upon submission of the case the lower court adjudged Lowe the owner of the land in controversy, and dismissed appellant's petition. From that judgment, Maynard has appealed.

Maynard claims under a patent issued to J. M. Jackson for 100 acres, dated October 13, 1854. Appellee claims under three patents: (1) A patent to Isaac Mainer for 100 acres, dated August 21, 1844; (2) a patent to Benjamine Mainer for 75 acres, issued February 24, 1847; and (3) a patent issued to Henderson Scott for 200 acres, on March 18, 1873. During the pendency of the action, Lon Ford, a surveyor of Pike county, was agreed upon by the parties to survey and locate on the ground the patents under which they respectively claimed. His map, filed with his deposition, shows that appellant's Jackson patent laps upon both the Isaac Mainer and Benjamin Mainer patents, and that appellee's Scott patent laps upon the Jackson patent. It is conceded that the location of these patents, as made by the surveyor, is correct; and in his brief here appellant further concedes that, as to that part of the land in controversy which lies within the Isaac Mainer and Benjamin Mainer patents, he is without title. So that the controversy concerns only the land embraced within the lap of the Jackson patent and the Scott patent, and this lap is shown to contain 31.2 acres.

The Jackson survey and patent lies on both Big branch and Scott's branch. The ridge making the watershed between these branches crosses the patent boundary in a general northeast and southwest direction. The

land on the east side of this ridge is the land in controversy. It is wild, unimproved, rough, mountain land. The Scott survey and patent lies wholly on the east side of this watershed, or dividing ridge, and its lines practically follow the crest of the ridge from the south side to the north side of the Jackson survey. All of appellant's improvements within the Jackson patent are on the west side of this dividing ridge; neither he nor any predecessor in title has ever cleared or inclosed any of the land on the east side of the ridge. All of appellee's clearings, improvements, and inclosures are within his senior Mainer surveys, or within his Scott survey outside of the lap of the Scott and Jackson surveys.

By statutory enactment, and by a long line of decisions of this court, a junior patent which embraces land covered by a senior patent is void to the extent of the interference, and actual possession on that part of the junior patent, not covered by the senior patent, will not be extended so as to cover the land within the interference, without an actual occupancy or inclosure of it. Jones v. McCauley's Heirs, 2 Duv. 14; Trimble v. Smith, 4 Bibb. 257; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062; Combs v. Adams, 182 Ky. 762, 207 S. W. 691. Consequently, appellee's possession of the Scott survey, outside of the lap of it and the Jackson survey, no matter how long continued, gave him no possession of that part of the Jackson survey in controversy, since there is no proof that he, or any person under whom he claims, ever at any time had an improvement within the lap, or had any part of it inclosed, or exercised any control over it, except that they did, occasionally, enter thereon and cut and remove timber from it. It has been repeatedly held by this court that occasional entries by the junior patentee and his vendees within the lap, for the purpose of cutting and removing timber, is not a sufficient possession to oust the senior patentee, or those claiming under him. Wilson v. Stivers, 4 Dana, 634; Whitley County Land Co. v. Powers' Heirs, 146 Ky. 801, 144 S. W. 2.

Appellee's counsel with commendable fairness admit that the evidence of his adverse possession of the 31.2 acres embraced within the lap of the Jackson and Scott patents is "meager." They insist, however, that more than 20 years ago Henderson Scott, appellee's remote vendor, and Jordan Maynard, father of appellant, established the top of the dividing ridge between Big branch and Scott's branch as the line between their re-

spective lands. But the only proof to sustain this contention is the testimony of the witness J. M. Taylor, an old resident of the neighborhood, who, when asked if he heard Jordan Maynard, father of appellant, say anything about where the division line, or cross-line, between him and Scott was, answered, "He said that he and Mr. Scott made the top of the ridge the line." An agreed, or conditional, line between landowners may be established, if evidenced by a writing to that effect signed by the parties, or if there be a controversy as to the location of a division line, and the parties agree upon the location for the line between them, and carry that agreement into effect by marking such line on the ground, and thereafter recognize the line so marked as the line between them, and they and their vendees claim and hold to it by actual adverse possession continuously for 15 years, the establishment of such a line will be upheld. Amburgy v. Burt, & Brabb Lumber Co., 121 Ky. 580, 89 S. W. 680, 28 Ky. Law Rep. 551; Grider v. Davenport, 60 S. W. 866, 22 Ky. Law Rep. 1455; Frazier v. Mineral Development Co., 86 S. W. 983, 27 Ky. Law Rep. 815; Warden v. Addington, 131 Ky. 296, 115 S. W. 241.

Here, however, we have only the statement of a witness that one of the parties told him that "he and Mr. Scott made the top of the ridge the line." There is no evidence that there was any dispute between Jordan Maynard and Henderson Scott as to where the division line was, or to settle which they established an agreed line; nor is there any evidence that they marked such a line on or along the top of the ridge, or that either of them afterwards recognized the top of the ridge as the line between their lands, or that Maynard afterwards only claimed to the top of the ridge; nor is there any evidence as to the consideration, if any, which moved Maynard to surrender to Scott 31.2 acres of land embraced within his senior survey, and to which he then had both title and possession; and, as has been stated, the evidence refutes the claim of any adverse holding up to the top of the dividing ridge by Henderson Scott, or appellee claiming under him. The evidence relied on is entirely insufficient to show the establishment of an agreed or conditional line between Jordan Maynard and Henderson Scott.

During the taking of the deposition of the surveyor, Ford, he testified that, in his judgment the deed executed by Jordan Maynard to appellant did not include

the land in controversy. Thereupon appellant obtained from his brothers and sisters, and the children of such of them as were dead, all of the heirs of his father Jordan Maynard, deeds conveying their interests in the land in controversy to him. It is now insisted by appellee that appellant had no right, title, or claim to the land at the time he sold to Williamson and Varney, and that the only right he now has is such as he obtained after the issues in the case were made up. In this he overlooks the fact that, unless his right of entry had been barred by an adverse holding for the statutory period, appellant had, at least, an undivided one-sixth interest. Under the issues in this case, we think the appellant had the right, at any time before judgment, to perfect his title, if it in fact was defective, or, if the deed under which he then claimed did not cover the land, to acquire the outstanding title.

In the case of Logan v. Bull, 78 Ky. 607, an action for specific performance of a contract to convey real estate, wherein it was urged that the vendor was without title at the time of making the contract, and could not convey the title he had undertaken to convey, the court said: ''The general doctrine is that a contract incapable of being enforced against one party that party is equally incapable of enforcing it against the other. Fry on Specific Performance, p. 198. It has often been held under this rule that a party at the time he makes his contract, although not invested with such a title as he undertakes to convey, may compel a specific execution where time is not of the essence of the contract. Cases may be found, and language used by some of the elementary writers on the subject, conducing to the conclusion that, in the absence of such a title in the party at the time of making the contract as he contracts to convey, the vendee may rescind, and a specific execution will be denied; but the equitable rule as now settled by nearly all the authorities on the subject is that, when the contract is required to be performed, if the party is able to convey, and tenders his deed, the contract will be enforced, although his title was defective at the date of the contract; and if not able to convey at the time of filing a bill for rescission, if time is not the essence of the contract, the chancellor will permit the vendor, if he can do so within a reasonable time, to supply the defects in his title, so as to comply with his contract.'' See, also, Smith v. Cansler, 83 Ky. 367, and Posey et al. v. Kimsey, 146 Ky. 205, 142 S. W. 703.

264

Applying that principle to what we conceive to be an analogous situation, if, in their answer, Williamson and Varney had merely pointed out the claimed defect in appellant's title, without making appellee a party, and appellant had secured the deed now complained of, could Williamson and Varney have been heard to complain? Undoubtedly no. Clearly, then, appellee cannot complain. He came into this action asserting both title to and adverse possession of the land in controversy. He could succeed only on the strength of his own title and possession, and cannot be heard to complain that appellant strengthened or perfected his title, which appellee had assailed.

Wherefore the judgment is reversed, with directions to award appellant the 31.2 acres of land in controversy lying within the lap of the J. N. Jackson and Henderson Scott patents, and for proceedings consistent herewith.