# Federal Gas, Oil & Coal Co. et al. v. Harmon et al.

(Decided May 15, 1934.)

BUFORD C. TYNES, IRA M. NICKELL and W. R. McCOY for appellants.

J. B. CLARK and J. H. PREECE for appellees.

OPINION OF THE COURT BY CREAL, COMMISSIONER—
Reversing.

This action originated in the quarterly court of Martin county on September 2, 1927, when Uriah Harmon and Betty Harmon, his wife, filed a petition against the Griffith Lumber Company, a corporation, wherein they sought to recover from the latter the sum of $195 as the value of timber alleged to have been wrongfully cut and removed by the corporation from a tract of land described in the petition which it was alleged belonged to plaintiffs. After setting out the boundary by natural objects, the tract of land is further described as containing about 200 acres "and being the same lands bought from Henry Harmon."

By answer the Griffith Lumber Company denied all material allegations of the petition and alleged that if it had cut or removed timber from the boundary of land described in the petition it had legal title thereto and that plaintiffs were not the owners of the timber and had no interest therein. It asked that the cause be removed to the Martin circuit court for the purpose of determining the title to the timber in controversy. Upon its motion the case was transferred to the Martin circuit court.

By reply, plaintiffs traversed the affirmative allegations of the answer and thereafter filed an amended petition in which they alleged that the defendant unlawfully entered upon the tract of land described in the petition and cut and removed 735 trees consisting of 200 poplar, chestnut, and walnut trees under 14 inches 2 feet from the ground, the size agreed upon between the parties, worth $1.50 each or at least $300; and that

the remainder of the timber cut, and under the size agreed upon between the parties, was of the value of $250 and they asked for judgment for $550.

On August 6, 1928, the Griffith Lumber Company filed an amended answer and counterclaim which it made a cross-petition against the Federal Gas, Oil & Coal Company in which it alleged that at the time complained of in the petition it was the owner and had the legal title to and was in possession of all timber on a tract of land situated on Emily fork of Wolfe creek and its tributaries in Martin county which is fully described in the pleading and also described certain exceptions from the boundary and further alleged that no part of the timber as complained of was cut from the lands included in the exceptions; that since the filing of the answer and amended answer, it learned that plaintiffs were claiming to be the owners of timber growing on a portion of the land upon which it was the owner of the timber; that the patent under which it claims the timber is senior to the patent under which plaintiffs claim; and that to the extent that plaintiffs' claim laps upon the boundary upon which it owned the timber, their title was void and of no effect and that it and not plaintiffs owned the timber thereon.

For cross-petition against the Federal Gas, Oil & Coal Company, it alleged that it purchased the timber in dispute from the Federal Gas, Oil & Coal Company, a corporation, and asked that it be made a party and called upon to intervene and assert its title to the boundary in dispute.

On January 8, 1929, the Federal Gas, Oil & Coal Company filed its answer and counterclaim in which it denied that plaintiffs are the owners of or have legal title to the tract of land described in the petition or any part thereof or that they are the owners of the timber thereon and further alleged that it is the owner of and in the actual possession of the tract of land and the timber thereon described in the answer, counterclaim, and cross-petition of the Griffith Lumber Company, the description being the same as that given in the latter pleading; that part of the land set out and described in plaintiffs' petition laps upon and conflicts with the boundary described in its answer and to the extent of the conflict, it is the owner thereof and the timber thereon. It further alleged in effect it claimed title under a

patent senior to the one under which plaintiffs claim title and that plaintiffs' claim to any portion of the land was a cloud upon its title which it asked to have removed.

In a second amended answer the Griffith Lumber Company alleged that in June, 1925, the plaintiffs sold to the Wolfe Creek Lumber Company, its grantor, all timber 14 inches and over measured at the stump on a tract of land described in the deed as containing 200 acres for $1,200 and by deed or instrument conveying same warranted generally the title thereto; that prior to the purchase by its grantor, the Wolfe Creek Lumber Company, of such boundary of timber, the Wolfe Creek Lumber Company had purchased from the Federal Gas, Oil & Coal Company a tract of land which adjoins and interlocks with the tract of timber sold by plaintiffs to the Wolfe Creek Lumber Company to the extent of 65 acres; that the title of the Federal Gas, Oil & Coal Company to the 65-acre interlock is superior to that of plaintiffs and that by reason thereof plaintiffs have no title to such interlock; that at least 40 per cent. of the timber embraced in the contract of sale by plaintiffs to its immediate grantor, the Wolfe Creek Lumber Company, was cut from the land embraced within the 65-acre interlock and that its value represented 40 per cent. of the purchase price therefor, or $480; and that by reason of being so situated, it was compelled to and did pay to the Federal Gas, Oil & Coal Company a sum in excess of that amount and by reason thereof it is entitled to recover from plaintiffs the sum of $480, for which sum it prayed judgment on its counterclaim.

The cause was referred to the master commissioner to hear proof and make a report of his finding to the court. In addition to numerous exhibits, plats, etc., there are 6 volumes of transcript of the evidence heard. The evidence discloses that on May 28, 1866, a patent was issued to William Troy for a tract of 32,000 acres, the boundary of which includes all lands referred to and described in the pleading in this action. In 1881, a patent was issued to Henry Harmon for a 200-acre tract now claimed by Uriah and Betty Harmon. The Federal Gas, Oil & Coal Company established by record its chain of title running back to the patent from the commonwealth to William Troy. Plaintiffs claim title under the Henry Harmon patent. They introduced no title papers in evidence but this was done by defendants.

In time, the William Troy patent has been divided by an east and west line called the "divisional" line which divides the patent into what is known as the southern half and northern half of that patent. The Federal Gas, Oil & Coal Company owns a large tract in the southern half of the Troy survey and claims this divisional line as its northern boundary.

B. H. Howell, an engineer, shown to have had much experience in surveying and locating mountain lands, introduced in the record a plat showing the location of the "divisional" line between the northern and southern half of the Troy patent and the lands south thereof owned by the Federal Gas, Oil & Coal Company. He also located on the plat the Henry Harmon patent claimed by plaintiffs. This plat shows that the Henry Harmon patent overlaps the southern half of the Troy survey to the extent of 59.40 acres. He testified that his plat correctly shows the location of the line and the boundary of the various tracts.

L. E. Wallace, an engineer, introduced by plaintiffs, who also has had much experience in surveying and locating mountain lands, testified and introduced in evidence a plat in which he located the dividing line between the northern and southern half of the Troy survey and also showed the location of the Henry Harmon patent. This plat shows that the latter patent overlaps the southern half of the Troy survey, but he did not attempt to correctly compute the extent of the overlap, however, he gave as his opinion that it was more than 50 acres and stated that Howell's location of the Harmon patent was substantially correct.

In the report of his findings the master commissioner first took up the question of title to the land in controversy called the "interlock" from which a portion of the timber in controversy had been cut, and, after referring to the patents under which the respective parties claim title, he concluded that since appellees claim title under a junior patent and subsequent deed to the disputed lands, they must fail unless they established possession for such a period of time and of such character as to establish title by adverse possession. He found, in effect, that B. H. Howell, the engineer introduced by the Federal Gas, Oil & Coal Company, had shown on his plat the correct location of the line between the northern and southern half of the Troy pat-

ent. A careful examination of the evidence bearing on that question reveals that his findings as to the proper location of this line is sustained by a preponderating weight of evidence. He found, however, that the Harmons and those under whom they claim, had cut timber, farmed, and exercised ownership and control over that portion of the Henry Harmon patent which lies south of the "divisional" line and which is the land in dispute for a period of 30 years or more, and that they are the owners of same by adverse possession. He further found from the evidence that the Griffith Lumber Company had cut, removed from plaintiffs' land, and converted to their own use 200 trees of smaller dimensions than the minimum specified in the contract of sale of the timber and that the reasonable value of such trees was $1 each or in all $200, and that some of the timber was cut and removed from the tract in controversy.

Both the Griffith Lumber Company and the Federal Gas, Oil & Coal Company filed exceptions to the commissioner's report which exceptions were overruled, and it was adjudged that plaintiffs recover of the Griffith Lumber Company the sum of $200 with interest from April 4, 1931, and that plaintiffs are the owners of the tract of land described in their petition and that their title to same be quieted. From that judgment, defendants are prosecuting this appeal.

Since the evidence clearly discloses that the dividing line between the northern and southern half of the Troy patent, as located by the engineer B. H. Howell, is correct and that it is the dividing line between the lands of appellant, the Federal Gas, Oil & Coal Company, and the lands of plaintiffs unless plaintiffs have acquired title to the land in dispute by adverse possession, we come first to a consideration of the evidence bearing on that phase of the case. Unquestionably appellees and their predecessors in title claimed title to the entire boundary as described in the Henry Harmon patent, but none of them have ever lived upon that portion of the boundary which overlaps the southern portion of the Troy patent and which is now claimed by the Federal Gas, Oil & Coal Company. For a number of years there has been a house within the boundary of the Harmon patent known as the Mose Spears house. This is situated on White Oak fork a considerable distance north of the dividing line between the northern and southern half of the Troy patent. Appellees have cleared

and inclosed some land in Sartain Hollow. This clear-ing was started at or near the mouth of the branch a short distance below the Mose Spears house and was extended in a southerly direction toward the land in dispute. It was ultimately extended over the division line between the northern and southern half of the Troy patent so as to include 5 or 6 acres within the boundary claimed by the Federal Gas, Oil & Coal Company. One witness testified that this clearing was started during the World War. Witnesses for appellees testified that it had been cleared for about 15 years and one witness, a son of appellees, testified that it had been cleared about 15 or possibly 16 or 17 years.

Taken as a whole, the evidence as to when the clear-ing was made on the land in dispute is very indefinite, inconclusive, and far from convincing. The evidence also shows that at various times, appellees or those au-thorized by them to do so, cut and removed timber from the land in dispute. There is likewise evidence on be-half of appellees that they have claimed to well marked and well defined boundaries. On the other hand there is evidence on behalf of appellant that the Federal Gas, Oil & Coal Company and its predecessors in title have owned, claimed, and exercised dominion and control over the entire boundary claimed by them continuously for more than 15 years before the controversy over the title to the land in dispute arose. They show successive leases to various parties of the entire tract claimed by them. At one time and within the 15 years before this controversy arose, Uriah Harmon owned a tract of land on the Alex Gauze branch which was within the bound-ary of the southern half of the Troy patent. Agents for the Federal Gas, Oil & Coal Company claimed that he committed trespass upon its lands adjoining this tract and that he built a house partially over the line and on lands of the company. An agent for the com-pany took the matter up with him and he agreed to and did take a lease from the company. In this lease it was recited that the tract which he owned on the Alex Gauze branch was the only land claimed by him within the boundary of the John's tract in the southern half of the Troy patent and claimed by the Federal Gas, Oil & Coal Company.

Since there is a conflict between the Henry Harmon patent under which appellees claim title and that part of the senior Troy patent for which the Federal Gas,

Oil & Coal Company holds title papers, appellees' deed to the extent of such interference is void, and, unless they have acquired title by adverse holding, their claims must fail. The fact that they had possession of and actually occupied a portion of the Harmon patent outside of the interference would not operate to extend their possession to lands within the interference. Tennis Coal Co. v. Napier, 142 Ky. 719, 135 S. W. 295; Bates v. Wright, 201 Ky. 430, 257 S. W. 45; Morgan v. Moseley, 206 Ky. 72, 266 S. W. 876; Kentucky Union Co. v. Cornett, 248 Ky. 360, 58 S. W. (2d) 655; Maynard v. Lowe, 231 Ky. 258, 21 S. W. (2d) 285. The only way they could acquire title to the interference would be to take actual possession and hold adversely to a well-defined or marked boundary for the full statutory period of 15 years (Ky. Stats. sec. 2505). Bates v. Wright, supra; Pendergrass v. Swiss Oil Corporation, 217 Ky. 789, 290 S. W. 713; Burnett v. Miller, 174 Ky. 91, 191 S. W. 659; Patton v. Stewart, 173 Ky. 220, 190 S. W. 1062; Cumberland Coal Co. v. Croley, 172 Ky. 222, 189 S. W. 198.

Adverse possession sufficient to support title must be actual, open, continuous, exclusive, and adverse for the full statutory period. Sackett v. Miniard, 219 Ky. 765, 294 S. W. 487; Kash v. Lewis, 224 Ky. 679, 6 S. W. (2d) 1098; Iseman v. Iseman, 226 Ky. 116, 10 S. W. (2d) 613. It cannot be rested on claim alone, but must be evidenced by such physical acts as will give the owner constant notice of the claimant's possession. Griffith Lumber Co. v. Kirk, 228 Ky. 310, 14 S. W. (2d) 1075; Slaven v. Dority, 142 Ky. 640, 134 S. W. 1166. Mere occasional entry by a junior patentee on land within an interference with a senior patent for the purpose of cutting and removing timber and the payment of tax thereon is not sufficient possession to establish title by adverse possession. Swift Coal & Timber Co. v. Ison, 231 Ky. 404, 21 S. W. (2d) 659; Ratcliff v. Meade, 226 Ky. 209, 10 S. W. (2d) 834; Fitzgerald v. Aldridge, 201 Ky. 846, 258 S. W. 665.

Apart from the showing that appellees cleared, inclosed, and cultivated a small portion of the land within the interference, the evidence signally fails to disclose such acts of ownership on the part of appellees as would be sufficient to establish title by adverse possession; and, as already indicated, it is not shown that the clear-

ing within the interference was done 15 years or more before the title thereto was put in issue in this action.

The finding of the commissioner that appellees have acquired title to the land in dispute is not sustained by the evidence, it therefore follows that the judgment in that particular is erroneous.

It is insisted by counsel for appellant the Federal Gas, Oil & Coal Company that because of the failure of appellees to deny the affirmative allegations of either the third amended answer and counterclaim of the Griffith Lumber Company or its answer and counterclaim that the latter was the owner in fee simple of the land in controversy, it was entitled to the relief sought by its pleading. The authorities cited indicate that this contention is not wholly lacking in merit, however, under the conclusions we have reached it is unnecessary to determine that question.

Counsel for appellees are asserting that the William Troy patent, under which the Federal Gas, Oil & Coal Company claim title, is void because it was issued in contravention of a statute then in force, similar in effect to sections 4703, 4704, of our present statutes, which provide that no survey shall be made for more than 200 acres and that the metes and bounds shall be given.

The case of Miller et al. v. Breathitt Coal, Iron & Lumber Co., 152 Ky. 390, 153 S. W. 468, 470, was an action in which appellee was seeking to recover 200 acres of land which constituted a part of a survey of 154,000 acres lying in Breathitt and other counties. The sole defense relied upon by appellant was that the patent was issued in violation of the statute in force at the time prohibiting a patent from being issued to one person for more than 200 acres of land in the same county in the same year. The patent, after making exclusions of other lands previously patented, contained 129,000 acres. It was issued pursuant to 645 orders of entry granted by the county court. In the course of the opinion it is said:

> "It is true that Combs, the deputy surveyor, did not actually make a separate survey under each of the 645 orders of entry granted by the county court. He did, however, after a survey and fixing of the boundary of a sufficiency of the vacant lands,

subject to entry and appropriation to include the quantity, which by a mathematical calculation he found necessary to make, if divided up, 645 parcels of 200 acres each, besides the exclusions.''

It was held that this procedure was permissible under former opinions of the court construing the statute invoked by appellants. Here, the William Troy patent introduced in evidence shows that it was issued ''by virtue and in consideration of 160 orders of the Lawrence county court,'' and it only requires a simple mathematical calculation to determine that 160 tracts of 200 acres each would make up the 32,000 acres called for in the patent. In the course of the opinion the court quoted from the case of the American Association, Ltd., v. Innis, 109 Ky. 595, 60 S. W. 388, 391, 22 Ky. Law Rep. 1196, wherein it was held that one person might purchase and obtain any number of orders of county courts for surveys of vacant lands provided no one of them has over 200 acres, and, after referring to former cases so holding, it was said:

"However much we might be inclined to dissent from the views expressed in that opinion as an original proposition, it must be regarded as settled law, as vast pecuniary transactions have been made on the faith of it, and any departure therefrom would involve in ruin many innocent purchasers of vacant land taken up exactly as it was in that case and this one.''

For the very reasons assigned in this quoted excerpt, this court would not be authorized to disturb the construction placed upon the statute in the former opinions.

Neither is there merit in the contention that the description in the patent is so vague and indefinite that it cannot be properly located. The description calls for natural objects and county lines and shows upon its face that it can be located with a reasonable assurance of accuracy and the evidence discloses that the southern portion at least has been so located.

From our finding that the Federal Gas, Oil & Coal Company has title to and is the owner of the lands in controversy, it follows that the judgment as against the Griffith Lumber Company also must be reversed because it is shown by proof that a part of the timber for which

'recovery was had was cut and removed therefrom and. they are only entitled to recover for timber cut outside of the interference of their boundary with that of the Federal Gas, Oil & Coal Company, but in these circumstances it would be impossible to determine the issues made by pleadings as between appellees and the Griffith Lumber Company without additional proof being heard. However, it is argued by counsel for appellees. that this court is without jurisdiction to hear and determine the appeal of the Griffith Lumber Company because appellees' recovery was for only $200 and that is the amount in controversy, but this argument overlooks. the fact that the 'Griffith Lumber Company has a counterclaim against appellees for $480, and this, added to the sum recovered, makes $680 which is the amount in controversy. See Singer Mfg. Co. v. Witt, 118 Ky. 344, 80 S. W. 1124, 26 Ky. Law Rep. 213. Richart v. Goodpaster, 116 Ky. 637, 76 S. W. 831, 25 Ky. Law Rep. 889, and other cases cited in notes under section 950-1, Kentucky Statutes.

Judgment reversed on appeal of the Federal Gas,. Oil & Coal Company with directions to enter judgment for it in conformity with this opinion and on appeal of the Griffith Lumber Company judgment is also reversed with directions to permit the parties to introduce additional proof if they so desire.